State of Connecticut *v.* Francis Boyer

File No. CR 12-3715

State of Connecticut *v.* Stanley Dexter

File No. CR 12-3713

Appellate Division of the Circuit Court

Argued June 24—decided October 1, 1963

*Robert C. DuBeau* and *Robert D. King,* of Rockville, for the appellants (defendants).

*E. George Gorsky,* assistant prosecuting attorney for the appellee (state).

KOSICKI, J. The defendants were tried together on separate informations containing identical charges and, though no stipulation was filed, have jointly presented their appeals from the judgments rendered. The defendant Boyer was accused of having committed a breach of the peace on or about December 20, 1962, and the defendant Dexter was charged with committing a breach of the peace on or about December 23. No bill of particulars was requested or filed. The finding, which is not subject to correction, discloses the following: Edmond Dupont, aged sixty-nine years, lived alone on the first floor of a two-family house in Ellington. The second floor was occupied by his daughter, her husband Leonard Miller and their children. The telephones, one in each apartment, were so connected that calls and rings were received simultaneously. The defendant Boyer resided with his family about three streets away, and the defendant Dexter and his family lived about 200 feet from

Dupont's house. Boyer and Dexter were not on friendly terms with Dupont. On December 20, Boyer over the telephone threatened Dupont, saying that Dupont was going to die on Christmas eve and that his house would be burned down. Boyer also used vile, abusive and indecent language. These violent and offensive words were heard on the upstairs phone by Dupont's daughter and her husband. About an hour later, Dupont and the Millers heard a noise that sounded like a gunshot near the house. They saw Boyer standing about twenty feet from the house near a stone wall. He then walked away in the direction of the Dexter house.

On December 23, Dexter telephoned Dupont from Palmer, Massachusetts, saying that Dupont was going to die and that "they" were going to burn his house down. He used indecent and offensive epithets toward Dupont. The Millers overheard this threatening and abusive language on their telephone. The state police were notified immediately. Mrs. Miller left the house and spent the night at the home of her nephew. As a consequence of these acts, Dupont and the Millers became excited, nervous, upset, angry and frightened.

The only question presented by this appeal is whether the utterance of the described language over a telephone constitutes a violation of § 53-174. We have held that telephone calls of a threatening, abusive and violent nature were a breach of the peace proscribed by the statute. *State* v. *Protopapas,* 23 Conn. Sup. 471. In that case, however, the sole error assigned was the claimed failure of the presiding judge to define to the jury the word "peace" as meaning "public peace" and, therefore, to be distinguished from the peace of the individual. The present appeal is based on the proposition that there can be no breach of the peace through a

threatening or abusive communication over a telephone and, further, that at common law a breach of the peace by threat cannot be committed unless the threat is accompanied by acts showing a formed will to execute the threat. In support of this proposition the defendant cites *People* v. *Monnier,* 280 N.Y. 77; note, 48 A.L.R. 83, 85; and 8 Am. Jur., Breach of Peace, § 8. We are asked to overrule the *Protopapas* case, supra, and adopt the rule stated in *State* v. *Robinson,* 23 Conn. Sup. 430. The latter case concerned a violation of § 53-175, penalizing offensive or disorderly conduct, and it was there held that the misconduct prohibited by the statute must occur in a public place and that an offensive telephone conversation, occurring while the complaining witness and the accused were in their own homes, did not constitute disorderly conduct.

Disorderly conduct was not an offense at common law; it is punishable by statute as an offense separate and distinct from breach of the peace, and the place of commission of the offensive act is an element of the crime. *State* v. *Robinson,* supra. Our breach of the peace statute is not merely a codification of the common law; it includes offenses which were not criminal at common law and among them is the utterance of threatening, abusive and indecent language against another. See 3 Blackstone, Commentaries, c. 8 (Chase, 4th Ed. p. 675); 4 id., c. 11 (Chase, 4th Ed. pp. 912-918). From the earliest times threats were by our statute included among other acts of breach of the peace. In 1865, the use of scurrilous, abusive or indecent language was added to the prohibited acts. Rev. 1866, p. 264, § 123.

We find no authority for the claim that to constitute a threat under our statute there must be immediate menace of violence or acts showing a

present ability and will to execute the threat. That would liken the threat to an assault, which is and always has been a separate offense under our statute and distinct from a threat. A threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. A threat, unlike an assault, is not limited by time or distance. It is equally vicious whether made vis a vis or over a wall or across a stream, or whether it is uttered by the unaided voice or over a megaphone or is amplified through a loudspeaker. A threat is always an indication of probable evil to come, whether at once or at some certain or uncertain time in the future; and the lingering or uncertainty of the menace, particularly when voiced through a faceless telephone, is apt to cause greater fear and dread than if the threat was made face to face by an adversary who could be held to immediate accountability. Nor is there any diminution in the criminality of breaking the peace or provoking contention by mocking any person with abusive or indecent language when the offensive language is uttered through a telephone. Section 53-174 does not define the crime of breach of the peace but merely specifies certain ways of committing it. "It may be committed in ways other than those specified." *State* v. *Cantwell,* 126 Conn. 1, 5. The instrumentality by which a breach of the peace is committed is not a necessary element or ingredient of the crime. Thus, in a civil action it has been held by our Supreme Court of Errors, referring to the libel portion of the same statute, that the reading of defamatory words from a prepared manuscript, to be broadcast over the facilities of a radio station, is an actionable libel. *Charles Parker Co.* v. *Silver City Crystal Co.,* 142 Conn. 605, 611, 612.

The defendants further claim that the use over the telephone of language otherwise prohibited

under § 53-174 is not an offense within the statute because it is not specifically included therein, and that it could not have been the intent of the legislature that such utterance over a telephone was a crime under that statute because of a recent enactment, Public Acts 1963, No. 182, which in express terms makes such utterance a crime.[1] This act became effective on October 1, 1963; therefore, since it was not applicable to the facts in this case at the time of their occurrence, we are not called upon to interpret it in the light of the law then existing. It suffices to say that an act passed subsequently to the events which resulted in the prosecution under review can have no effect upon the construction which is to be placed on § 53-174. *Barber* v. *Morgan,* 84 Conn. 618, 625.

The defendants stress and reiterate the familiar argument that to cause a breach of the peace there must be a disturbance of the public peace. Nowhere do we find a clear definition of what is meant by "public." One person, other than the offender, can be the public. It is not even essential that an actual disturbance of the public peace be shown. Nor is it necessary that there be an intention to break the peace. *Delk* v. *Commonwealth,* 166 Ky. 39; note, 48 A.L.R. 83, 86. It suffices if the alleged offensive act is of such a character that it naturally tends to cause serious disquietude on the part of those in the vicinity where the act is likely to exercise its

---

[1] "[PUBLIC ACTS 1963, No. 182] AN ACT CONCERNING OFFENSIVE TELEPHONE CALLS. Any person who, by telephone under jurisdiction of the public utilities commission, addresses another in or uses indecent or obscene language, or who telephones another repeatedly for the purpose of annoying, threatening or harassing him, shall be fined not more than five hundred dollars or imprisoned not more than one year or both. Such offense may be deemed to have been committed either at the place where the telephone call was made or at the place where it was received. The court may order any person convicted under this act to be examined by one or more competent psychiatrists."

malignity. See *State* v. *Van Allen,* 140 Conn. 586, 589. Each individual is entitled to be secure in his person, to be free from unjustified molestation by others, and to be guarded by the law against any unwarranted intrusion upon his tranquility. Upon this foundation rests the existence of an orderly and civilized society.

There is no error on either appeal.

In this opinion DEARINGTON and LEVINE, Js., concurred.