Deborah **ROBINSON**, by her next friend Wilbert Robinson, et al., Plaintiffs,

and

Judy Lewis, by her next friend Violet Lewis, and Debra Braxton, by her next friend Mary Braxton, Intervenors,

v.

John **BRADLEY**, individually and as principal of the Martin Luther King Middle School, Thomas McAuliffe, individually and as Assistant Superintendent of the Boston Schools, Patricia Dupres, as public school teacher at the Martin Luther King Middle School, John P. Holland, as Clerk of the Dorchester District Court, Defendants.

Civ. A. No. 69–546.

United States District Court
D. Massachusetts.

June 20, 1969.

Michael L. Altman, Boston Legal Assistance Project, Boston, Mass., for plaintiffs.

Gerard Powers, Edith W. Fine, Asst. Corp. Counsel, City of Boston, Boston, Mass., for City of Boston, McAuliffe, Dupres & Bradley.

Bruce G. McNeill, Howard M. Miller, Asst. Attys. Gen., Boston, Mass., for defendant Holland.

Before COFFIN, Circuit Judge, and FORD and CAFFREY, District Judges.

## OPINION OF THE COURT

COFFIN, Circuit Judge.

This is an action for both injunctive and declaratory relief. Jurisdiction is invoked under 28 U.S.C. § 1343. Plaintiffs, students at the Martin Luther King Middle School, a Boston public school, are minors and bring this action by next friends.[1] Plaintiffs seek to restrain the enforcement, operation,

1. Plaintiffs Judy Lewis and Debra Braxton were allowed to intervene in this action after the original and amended complaints were filed.

and execution of the Massachusetts "threats" statute [Mass.Gen.Laws ch. 275, § 2 *et seq.*] and a declaratory judgment that said statute is unconstitutional. 28 U.S.C. §§ 2201, 2281 *et seq.*[2] Defendant Bradley is principal of the Martin Luther King Middle School; defendant Dupres is a teacher at said King School; defendant McAuliffe is an Assistant Superintendent, administratively responsible for the operation of a number of public schools within the city of Boston, including the Martin Luther King Middle School; the defendant John P. Holland is the clerk of the Dorchester District Court in the city of Boston which has jurisdiction over minor criminal offenses committed within a section of the city of Boston in which the Martin Luther King Middle School is located.

On May 21, 1969, defendant Dupres appeared in Dorchester District Court to seek a juvenile delinquency complaint against plaintiff Deborah Robinson. The alleged basis of this complaint was a "threat" made to this defendant by plaintiff Robinson on May 12, 1969, while defendant was teaching a class at the King School. Defendant alleged that plaintiff came up to the door of her classroom, knocked on it several times, and asked to be admitted into the room. After defendant refused, plaintiff allegedly stated to her through the closed door: "If you come outside, I will beat you up."

Defendant Holland subsequently issued a complaint from the Dorchester District Court charging the plaintiff Robinson with juvenile delinquency for allegedly violating the Massachusetts "threats" statute. Mass.Gen.Laws ch. 275, § 2 *et seq.*[3] Prior to the issuance of the complaint, however, plaintiffs filed a motion, pursuant to 28 U.S.C. § 2281 *et seq.*, in the United States District Court for the convening of a three-judge district court. On June 4, 1969 a three-judge court was convened and on the same date the court heard oral argument. Legal memoranda were subsequently filed.

Plaintiffs make several constitutional attacks on the statute—that it is vague and overbroad, in that it fails to provide adequate notice of criminal conduct and lends itself to arbitrary enforcement; that its "peace bond" provisions are violative of both the Eight and Fourteenth Amendments; and that it has a chilling effect on constitutionally protected speech. No allegation of bad faith is made.[4]

■ The first question we face is whether we have equitable jurisdiction to grant injunctive relief under the teachings of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).[5] We start with the proposition

---

2. The amended complaint contained a count under 42 U.S.C. § 1983 as well. Plaintiffs then moved that this count be severed from their complaint. Defendants do not object. The motion is hereby granted.

3. The intervening minor plaintiffs alleged that defendant Dupres has accused them of violating the "threats" statute and also alleged that a juvenile delinquency complaint would be sought against them on June 10, 1969. We are informed that no such complaint has yet been issued.

4. Plaintiffs also allege that procedures in the Dorchester District Court are so deficient that they have "no adequate remedy at law" in Massachusetts courts. In

their memorandum plaintiffs assert "that the procedures in the Dorchester District Court are such that it is impossible for them to have a fair trial" and that the "absence of fair procedures in the Dorchester Court are sufficient 'special circumstances' to warrant the exercise of this court's equitable power. See Hulett v. Julian, 250 F.Supp. 208 (M.D.Ala. 1966)."

5. Plaintiffs argued that, at the outset of this federal proceeding, there was no state prosecution which had gone so far as to constitute a pending proceeding and that therefore § 2283 is not applicable. The complaint in this case was filed on May 21, 1969 at 1:38 p. m. Plaintiffs' uncon-

that our jurisdiction must rest on allegations which bring this case within the "special circumstances" justifying departure from the general principle that "[f]ederal interference with a State's good-faith administration of its criminal law 'is peculiarly inconsistent with our federal framework' * * *. [Dombrowski v. Pfister] 380 U.S. at 484, 85 S.Ct. at 1119, 1120." Cameron v. Johnson, *supra*, 390 U.S. at 618, 88 S.Ct. at 1339.

In *Dombrowski* the Court dealt with a mix of two factors: a state subversives registration law which was facially unconstitutional because of vagueness and overbreadth; and a series of harassing arrests, searches, and threats of prosecution. It was not made explicit in that case whether either the facial unconstitutionality of vagueness and overbreadth or the bad faith conduct of state officials would have been a sufficient ground for the relief given. It is possible to read *Dombrowski* as requiring both grounds, either ground, or solely bad faith.

In *Cameron*, however, the Court characterized the holding in *Dombrowski* as resting on the bad faith conduct. "In short, we viewed *Dombrowski* to be a case presenting a situation of the 'impropriety of [state officials] invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities * * *.' " *Id.* 390 U.S. at 619, 88 S.Ct. at 1339. And Mr. Justice Fortas in dissent spoke as clearly to this interpretation.

"*Dombrowski's* remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the State, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. *Dombrowski* should never be invoked when the State is, in substance and truth, engaged in the enforcement of valid criminal laws. Ordinarily, the presumption that the State's motive was law enforcement and not interference with speech or assembly will carry the day." *Id.* at 623, 88 S.Ct. at 1342.

Plaintiffs—who have made no assertion that defendants have acted in bad faith [6]—contend that since the Court in *Cameron* was not dealing with any issue other than that of bad faith, its comments cannot be taken as a definitive delineation of the reach of *Dombrowski*. The Commonwealth disagrees, contending that a *sine qua non* of federal equitable jurisdiction is a state's deliberate use of police power to harass or suppress First Amendment rights.

We do not find it necessary to resolve this issue, for we do not view Mass.Gen. Laws ch. 275 as facially unconstitutional because of vagueness or overbreadth. We observe, first, that "overbreadth" in this case is an allegation which, to have substance, assumes that the statute is

---

tested affidavit avers that defendant Dupres first presented her request for complaints to a probation officer in the Dorchester District Court at approximately 2:30 p. m. on May 21. Defendants have not argued that the Commonwealth proceedings commenced prior to this suit. While the issue is not important in the light of our decision, and the state of the record not entirely clear, we hold that § 2283 is not a bar to these proceedings. Dombrowski v. Pfister, *supra* at 587, n. 4, 85 S.Ct. 1116.

6. Except, perhaps, obliquely by allegations that the procedures applicable to juveniles in the Dorchester District Court afford inadequate protection. These allegations are not, in our view, to be equated with the kind of selective activities directed to the suppression of speech connoted by the bad faith label in *Dombrowski* and *Cameron*. Unlike the situation described in Hulett v. Julian, 250 F.Supp. 208 (M. D.Ala.1966), cited by plaintiffs, any alleged defects in District Court procedure may be raised through available state law channels. *See* text *infra*.

reasonably capable of being interpreted as to embrace every menacing remark against another's person or property, without regard to the seriousness of the intention, the capability of implementing the threat, or the presence of any "just cause" for fear. The statute is not like those in Dombrowski v. Pfister, *supra*; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); or Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) where the facial invalidity stemmed from an overbreadth, inherent in the incurably precise and clear statutory language. Here, however, if we assume *arguendo* that the statute is capable of reasonably foreseeable court interpretation confining it within constitutional bounds, the argument as to overbreadth drops out.

We view the statute before us as inviting such an interpretation. While ancient, it has never been interpreted, possibly because the critical words have carried traditional meanings within the common understanding. The object of the legislation, indeed, is specific enough without more. The "person or property of another" needs no exegesis.[7]

 Plaintiffs focus their attack on sections 2 and 6 of the statute.[8] Specif-

ically, plaintiffs challenge as impermissably vague both section 2's proscription of "threats" of the commission of a crime and the mandate of section 6 that punishment is to be imposed only if there is "just cause to fear that such crime will be committed".

The word "threat" has a well established meaning in both common usage and in the law. It is "the expression of an intention to inflict evil, injury, or damage on another". Webster's New International Dictionary, n. 1 (1966 ed. unabridged). In law "threat" has universally been interpreted to require more than the mere expression of intention. It has, in fact, been interpreted to require both intention and ability in circumstances which would justify apprehension on the part of the recipient of the threat. *See, e. g.,* Landry v. Daley, *supra* at 962; State of Maine v. Cashman, 217 A.2d 28 (Me.1966); State of Connecticut v. Boyer, 2 Conn.Cir. 288, 198 A.2d 222 (Conn.1963).[9]

We read the "just cause" proviso of section 6 as incorporating the elements of the "threats" language of section 2. That is, *only if there is that intention and ability, which would justify apprehension by the recipient in the circumstances, is there "just cause to fear that*

---

**7.** Plaintiffs argue that "another" could refer to the Commonwealth, based on the interpretation of that word in a trespass statute.

Apart from the obvious comment that the meaning of the same word may vary from statute to statute depending upon the context, we see no inherent constitutional defect in proscribing a serious threat against the property of a corporation or a governmental entity. *Cf.* Landry v. Daley, 280 F.Supp. 938, 964 (N.D. Ill.1968).

**8.** Section 2 reads as follows:
"If complaint is made to any such court or justice that a person has threatened to commit a crime against the person or property of another, such court or justice shall examine the complainant and any witnesses who may be produced, on oath, reduce the complaint to writing and cause it to be subscribed by the complainant."

Section 6 states:
"If, upon such examination, it is found that there is not just cause to fear that such crime will be committed by the person complained of, he shall be forthwith discharged; and if it is found that the complaint is unfounded, frivolous or malicious, the complainant may be ordered to pay the expenses of prosecution."

**9.** The word "threat" appears in several federal statutes and the courts have uniformly adopted the construction of "threats" discussed above. *See, e. g.,* United States v. Prochaska, 222 F.2d 1 (7th Cir.), cert. denied, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955); Berry Brothers Buick, Inc. v. General Motors Corp., 257 F.Supp. 542 (E.D.Pa.1966), aff'd per curiam, 377 F.2d 552 (3d Cir. 1967).

such crime will be committed by the person complained of * * *." Mass.Gen. Laws ch. 275, § 6. Insofar as First Amendment protection is concerned, this reading of the phrase would seem to equate "just cause" with "clear and present danger" or its variants. The term "just cause" is, of course, a common term used in a wide variety of instances, both in Massachusetts and elsewhere.[10]

Moreover, the speech involved here, if not "hard core" in the sense of being proscribed (i. e., the plaintiff's remark may not be punishable) does not present the danger of "chilling effect" on protected activities.[11]

Finally, even if, despite the fact that the words are of long standing tradition and usage in the law, the statute is in need of construction, on which we imply no judgment, there are state procedural avenues available, apart from criminal prosecutions. Plaintiffs may have two options: equitable relief, Kenyon v. City of Chicopee, 320 Mass. 528, 70 N.E.2d 241 (1946), or a proceeding under the Massachusetts Declaratory Judgment Act, Mass.Gen.Laws ch. 231A; Massachusetts Ass'n of Tobacco Distributors v. State Tax Commission, 1968 Mass.Adv.Sh. 489, 491, 235 N.E.2d 557; Commonwealth v. Baird, 1969 Mass.Adv. Sh. 727, 735, 247 N.E.2d 574.

We therefore conclude that there is no basis for the exercise of equitable jurisdiction. Our view of the issues of vagueness and overbreadth also disposes of the request for declaratory relief.

Order accordingly.

10. The Supreme Court's remark in Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), that the phrase "without just cause or legal excuse" has no meaning either inherent or historical, is clearly inapposite here. The statute there proscribed "loitering without just cause" and the statement was made against the background of a state court construction prohibiting peaceful picketing in a labor dispute by a single individual.

11. This is clearly true in the case of the plaintiff Robinson; for as the Commonwealth points out, she, hopefully, does not wish to continue threatening to "beat up" her teacher.

With respect to the two intervening plaintiffs, there is no evidence regarding their conduct. In this regard, we note that the absence of evidence raises a serious question of standing. In view of our disposition of the case, we do not consider this issue.