STATE of North Dakota, Plaintiff
and Appellee,

v.

Leonard WEIPPERT, Defendant
and Appellant.

Cr. No. 530.

Supreme Court of North Dakota.

Dec. 17, 1975.

Mervin Nordeng, State's Atty., Fargo, for plaintiff and appellee.

Gackle, Johnson & Rodenburg, Fargo, for defendant and appellant.

ERICKSTAD, Chief Justice.

The defendant Leonard Weippert appeals to our court from a judgment of the Cass County Court With Increased Jurisdiction sentencing him to thirty days in the county jail with twelve days suspended for time confined prior to trial and the balance suspended upon the condition that he abide by the laws. The case was submitted to our court on briefs, oral argument having been waived by both the defendant and the State.

The complaint alleges that Weippert committed the offense of making an annoying telephone call in violation of Section 8–10–07.1, N.D.C.C., by telephoning Dan Strutz in the city of Fargo on June 18, 1975, with intent to harass, annoy, intimidate, and offend and by addressing him with threats to inflict injury to his person.

An examination of the transcript of the trial discloses that Strutz, as Assistant Director at the New Life Center in Fargo, received two telephone calls on the afternoon of the 18th of June 1975 and one on the morning of the 19th of June 1975 from a person who identified himself in connection with two of the calls as Leonard Weippert and whose voice Strutz recognized in all three instances as that of Leonard Weippert. Strutz testified that Weippert told him that if he knew what was good for him and his family, he had better get out of town.

When asked to particularize the obscenity of the call, Strutz said that he would just as soon not repeat it but when pressed, he replied: "Well, I was called an S.O.B. and I better take my F'n family and get out of town."

In his own defense, Weippert conceded that he had placed one telephone call to Strutz, but his version of the conversation was that he told Strutz "if he couldn't take care of the mail then why didn't he pack up and go back to Canada."

Weippert appeals on two grounds: (1) that the evidence does not support the verdict and (2) that he was denied a fair trial because of the prejudice of the judge. We conclude that there is no merit in either of the contentions for the reasons hereinafter set forth.

The statute under which Weippert was charged reads:

"8–10–07.1. Telephone calls with intent to annoy—Misdemeanor.—Any offense committed by use of a telephone as herein set out may be deemed to have been committed at either the place at which the telephone call or calls were made or at the place where the telephone calls were received, and any person shall be guilty of a misdemeanor who:

"1. With intent to annoy, harass, terrify, intimidate, or offend, telephones another or addresses to such other person any threat to inflict injury to any person or property of any person shall be guilty of a misdemeanor.

"2. Makes a telephone call with intent to annoy another and without disclosing his true identity to the person answering the telephone, whether or not conversation ensues from making the telephone call, is guilty of a misdemeanor." N.D.C.C.

Weippert contends that the telephone calls did not constitute a violation of Section 8–10–07.1, N.D.C.C., because Strutz conceded on cross-examination that he did not consider the second call to include a threat on his life and that he did not consider the third call a threat to him personally.

In support of his contention that the words which he uttered over the telephone did not constitute a "threat" as contemplated by Section 8–10–07.1, N.D.C.C., Weippert makes the following argument:

"The crime described by this statute was unknown at common law and few cases shed any light on the definition of the word 'threat', a material element in the above-mentioned statute. In *State v. Cashman*, 217 A.2d 28 (Me.1966), the Supreme Court of Maine defined the word 'threat' as contained in 17 M.R.S.A., Sec. 3701, which provides:

'Whoever makes, publishes or sends to another any communication, written or oral, containing a threat to injure the person or property of any person shall be punished  .  .  .'

The court provided the following criteria in defining the word 'threat' as here used stating that (a) the words used must impart 'menace of destruction or of injury'; (b) the threat may be made by innuendo

or suggestion; (c) in determining [if] the words used constitute a true 'threat', the circumstances under which the threat is uttered and relations between the party may be taken into consideration; and (d) the threat must be such as would ordinarily cause alarm. The court in *State v. Lizotte*, 256 A.2d 439, 442 (Me.1969), approved an additional refinement stating that it is the reasonable and natural effect upon and understanding of the ordinary hearer which is controlling and that 'the gist of this whole offense is the possibility of inducing fear in the mind of another to his disquiet'. Finally, the court in *State v. Hotham*, 307 A.2d 185 (Me.1973) reiterated the foregoing requirements and stressed that a 'threat' must involve more than a message of 'menace of destruction or injury'; it is also an indispensable feature of a 'threat' that its 'promise of evil' must be in a context of circumstances by which it gives rise to a reasonable likelihood that 'alarm' or 'fear . . . to his disquiet' will be induced in some person." [Emphasis in original.]

Defense counsel asserts that Strutz testified that Weippert telephoned Strutz saying he was dissatisfied with the way the Center was being run, that he was looking into Strutz's background, and that if Strutz knew what was good for him, he and his family should get out of town and go back to Canada where he came from. Counsel's view of Weippert's testimony was that he was calling with regard to Strutz's failure to forward Weippert's unemployment checks, saying that if Strutz couldn't take care of the mail, he should go back to Canada.

■ The trial judge, as the trier of fact in this case, was entitled to accept the testimony of Strutz and reject the testimony of Weippert which he apparently did in finding Weippert guilty of violating Section 8–10–07.1, N.D.C.C.

Defense counsel asserts, however, that the trial judge was not justified in finding that a threat contemplated by Section 8–10–07.1, N.D.C.C., was communicated, because Strutz said that the only thing that "bugged" him was the obscene language that Weippert directed at his wife when she was on the phone and because Strutz during direct examination strongly implied that he did not take Weippert's language as a threat since he believed Weippert was drunk.

■ It is our view that the judge as the trier of fact could have concluded that Strutz was threatened notwithstanding that he may have been more upset over the obscene language used within his wife's hearing than he was over the threat itself. Alternatively, the trial judge could have concluded that the language used and the other circumstances present imparted both an intention and an ability that "would *justify* apprehension on the part of the recipient of the threat. [Citations omitted.]" [Emphasis added.] *Robinson v. Bradley*, 300 F.Supp. 665, 668 (D.Mass.1969). Whether Strutz himself was in fact apprehensive is a question different from whether the circumstances justified his (or any ordinary recipient's) being apprehensive.

Defense counsel further asserts that the trial court throughout the entire case strongly implied that it was convicting Weippert for using obscene language on the telephone or for being an annoyance rather than for uttering the threat.

Since we have no written findings of fact and none are required in a situation such as this, we cannot accept such a conclusion notwithstanding that some of the questions and comments of the court during the trial may have left that impression upon the defense counsel.

Just as one may not infer from questions asked by members of this court during oral argument what this court may ultimately conclude, one may not necessarily infer from questions or even statements made during the course of the trial what the trial court ultimately concluded. In this case we may assume from the colloquy which took

place between defense counsel, State's Attorney, and the court that the trial court was apprised of defense counsel's contention that a threat is an essential part of the crime charged and that an annoyance in itself does not constitute a violation of Subsection 1 of Section 8–10–07.1, N.D.C.C.

■ That being the case, consistent with *State v. Berger*, 234 N.W.2d 6, 12 (N.D.1975), and *State v. Neset*, 216 N.W.2d 285, 287 (N.D.1974), wherein we determined that our duty is to determine whether substantial evidence supports the conclusion of the trial court (not to substitute our own judgment for that of the trial court), we conclude that the first specification of error—that the evidence does not support the verdict—is without merit.

The next specification of error that we must consider is that Weippert was denied a fair trial because of the judge's prejudice. Defense counsel asserts that bias and prejudice of the trial court toward Weippert is evident in the court's questions and remarks directed to Weippert throughout the trial and in his failure to allow defense counsel final argument with regard to the merits of the case. In support of the first part of his contention, counsel asserts that the trial court interrupted the direct examination of Weippert by defense counsel to ask him a number of irrelevant questions with regard to the propriety of Weippert's demand that Strutz forward his mail and that the trial judge then proceeded to chastise him for his indecorous act. He also asserts that during the sentencing the trial court proceeded to inform Weippert that when he drinks "booze goes in and the brains go out," that when he gets "tanked up" he wants to start "cussing his friends," and that when he drinks he is "like an Indian" and wants to "scalp everybody."

■ We are certain that on reflection the trial court will concede that parts of the quoted remarks were inappropriate, although intended to accomplish an appropriate objective—that being to convince Weippert to refrain in the future from the exces-

sive use of intoxicating liquor. Parts of the transcript which we shall not relate amply disclose that the defendant had a very serious liquor problem. Although the parallel drawn by the court's singling out a particular race was improper, it does not constitute a basis for a new trial.

■ As for the contention that the trial court interrupted Weippert's examination by defense counsel with irrelevant questions and that he then proceeded to chastise him for his indecorous act, we think it sufficient to draw attention to Canon 3A(3) of the Code of Judicial Conduct adopted by this court on the 11th day of December 1974, effective January 1, 1975.

"CANON 3

"A JUDGE SHOULD PERFORM

"THE DUTIES OF HIS OFFICE IMPARTIALLY

"AND DILIGENTLY

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

"A. Adjudicative Responsibilities.

.    .    .    .    .

"(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity,
.    .    ."

*Accord, State v. Steele*, 211 N.W.2d 855, 868 (N.D.1973).

■ Although we do not condone what the court did in this case in conjunction with its interrogation of the defendant, we do not find in the interrogation a basis for the granting of a new trial. It is our view under the facts of this case that the trial court's interrogation of the defendant did not interfere with its ability to find the facts and thereafter to arrive at a fair and reasonable sentence.

In making this statement, we draw attention to the fact that the court was not vindictive in its sentencing as may be discerned from noting that the court gave Weippert credit on his sentence for the time he was incarcerated prior to trial and suspended the balance of the 30-day sentence pending the defendant's observance of the laws.

The contention that the court denied the defense counsel the right to make a final argument on behalf of the defendant relative to the merits of the case is not supported by the record on appeal. No objection is noted in the record. It is true that the record does not disclose that the court afforded counsel for the defendant or for the State an opportunity to make a closing argument, but we suspect that most of the records that we examine are silent as to such a matter inasmuch as the closing arguments are seldom recorded.

In so holding, we are not unaware of a recent decision rendered by the Supreme Court of the United States which held it error for a trial court to deny defendant's counsel the opportunity to make a closing argument. A request to 'be heard somewhat on the facts' was denied by the trial court on the basis of a new statute in New York which made summation discretionary with the court. *Herring v. State of New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).

It is our view that *Herring* is distinguishable on the basis that the record in the instant case does not disclose that such a request was made or denied or that the opportunity to make a final argument was not afforded defense counsel.

For the future, we recommend that the court as a matter of record afford counsel the right to make closing arguments and that inquiry be made in each case at that time on the record as to whether respective counsel desire the arguments to be recorded.

For the reasons stated in this opinion, the judgment and sentence of the trial court are affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.