STATE of North Dakota, Plaintiff
and Appellee,

v.

Marty GEFROH, Defendant
and Appellant.

Cr. No. 920137.

Supreme Court of North Dakota.

Jan. 22, 1993.

Lonnie W. Olson, Ramsey Co. State's
Atty., Devils Lake, for plaintiff and appel-
lee; submitted on brief.

Robert J. Woods, Woods Legal Services, Forest River, for defendant and appellant; submitted on brief.

NEUMANN, Justice.

Marty Gefroh appeals from a Ramsey County District Court judgment of conviction for terrorizing.[1] He raises as issues the admissibility of evidence of a previous assault, the sufficiency of the evidence, and the admissibility of prior convictions for impeachment purposes. We affirm.

The event at issue occurred on November 15, 1991. Prior to that time, Gefroh and the complainant, Kim Getzlaff, dated intermittently for approximately ten years. They had two sons together; Tyler, who was five years old at the time of the offense, and Brandon, who was one. Earlier in November, Kim had obtained a kitten for Tyler. Shortly thereafter, Gefroh brought a second kitten to Kim's home, and asked that she keep it for her and the children. Kim objected, claiming she could not afford to care for two kittens, but the second kitten was left with Kim and their sons.

On November 15, 1991, while speaking on the telephone, Kim told Gefroh to take the second kitten back. Kim testified that Gefroh "blew up" on the phone and told her he was going to "come over, cut the cat's head off and let it bleed all over the floor" while Kim, Tyler, and Brandon watched. Gefroh came to Kim's house, repeated that he was going to kill the second kitten, grabbed the animal and a kitchen knife, and left. Gefroh returned less than a half hour later. According to Kim's testimony, he stated: "I killed my cat. I cut its head off. There's blood all over." Tyler was present when Gefroh made these statements.

Then Gefroh allegedly asked Tyler, "[S]hould I kill your cat too? Your mom can't afford him. I'm going to kill yours too." Gefroh proceeded to torture and mutilate the kitten Kim had gotten for Tyler. He hit it on the back of the head with a knife, burned its ears with a cigarette, and eventually threw it against the living room floor with such force that some of its internal organs emerged from its rectum, and it was unable to move its hindquarters. Both Tyler and Kim were present during this episode.

Gefroh's sister, Kathy Gefroh, was also present during some of the above events, although trial testimony is unclear as to when she left Kim's trailer. After leaving, Kathy telephoned the police. The police arrived, questioned Gefroh and Kim, and then asked that Gefroh leave and not bother Kim or the children further. The police also left, taking the kitten with them to be euthanized.

Approximately a half hour after leaving, Gefroh telephoned Kim. That conversation provided the basis for the terrorizing charges and conviction against Gefroh. At trial Kim testified that the conversation unfolded as follows:

"Q. What did he say?

"A. He was telling me that—asking me if we were broke up now if there was, you know, anything left and I told him no not after what he had done. I told him we were through. And then he said, 'Why did you guys have to call the cops?'

"Q. Was he angry at that point on the phone?

"A. Yes. And then he goes, 'I'm going to get revenge.' And he told me straight out on the phone that he was going to—

"Q. —What did he say?

---

1. The offense of terrorizing is codified in Section 12.1–17–04, N.D.C.C., and states:
   "A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:
   1. Threatens to commit any crime of violence or act dangerous to human life; or
   2. Falsely informs another that a situation dangerous to human life or commission of crime of violence is imminent knowing that the information is false."

"A. We were going to end up either with flat tires on our car, sugar in our gas tank or not wake up at all.

"Q. What exact language did he say? Was this a 'maybe you might,' or was this definite or what?

"A. He said it. He didn't say maybe on not. He came out straight and said, [w]e will wake up with either flat tires, sugar in our gas tank or not wake up at all."

Gefroh was found guilty of terrorizing and of mistreating an animal by a jury in the District Court for Ramsey County. He was sentenced to four years in the State Penitentiary. This timely appeal from the judgment of conviction for terrorizing follows.

## I.

### ADMISSIBILITY OF PREVIOUS ASSAULTS ON THE COMPLAINANT

Gefroh's first issue on appeal is whether the trial court committed reversible error by allowing Kim to testify regarding a previous assault on her by Gefroh. We hold that it was not reversible error and affirm the trial court on this issue.

At pretrial conference on the day of trial, the State alerted the trial court and opposing counsel that it intended to question Kim about previous assaults on her by Gefroh. Gefroh's counsel objected to the introduction of such evidence as violative of Rules 402 and 403, N.D.R.Ev.[2] He asserted that the evidence was too stale, highly prejudicial, and not relevant to the case. The State countered by citing Rule

404(b), N.D.R.Ev., which allows the limited use of prior bad acts for purposes other than proof of the present charge.[3] After hearing arguments from both parties, the trial court decided to allow the testimony, but limited it to only one instance, in the summer of 1990, in which the authorities were involved and Gefroh was criminally charged:

> "So I'm going to permit the witness, Kim Getzlaff, to testify, but in a limited manner, Mr. Olson. I don't want any testimony as to any criminal charge. I don't want any testimony of the sentence of the disposition of that charge. She may testify that she had been struck or he had made prior threats in the relationship, that, in fact, she reported that to authorities if, in fact, she did or it came to the attention of authorities."

■ On appeal, Gefroh continues to assert that the evidence is highly prejudicial, irrelevant, and stale under Rules 402 and 403, N.D.R.Ev. We disagree. The standard for appellate review of trial court rulings admitting evidence under Rules 402 and 403 is well-established.

> "The determination of whether or not evidence is relevant, and the balancing of the evidence's probative value against its prejudicial effect are also matters for the trial court to resolve in the exercise of its sound discretion. *See* [*State v.*] *Huwe,* [413 N.W.2d 350 (N.D.1987)]; *State v. Schimmel,* 409 N.W.2d 335 (N.D.1987); *State v. Kringstad,* 353 N.W.2d 302 (N.D.1984). On appeal, we will not overturn a trial court's decision regarding the admission or exclusion of evidence on the

---

**2.** Rule 402, N.D.R.Ev., reads as follows:

"All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States or the State of North Dakota, by any applicable Act of Congress, by statutes of North Dakota, by these rules, or by other rules adopted by the Supreme Court of North Dakota. Evidence which is not relevant is not admissible."

Rule 403, N.D.R.Ev., provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence."

**3.** Rule 404, N.D.R.Ev., is entitled "CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT, EXCEPTIONS: OTHER CRIMES." Subsection (b) of that rule reads:

"*(b) Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

ground of relevancy unless the trial court abused its discretion. *See [State v.] Haugen*, [448 N.W.2d 191 (N.D. 1989)]; *State v. Newnam*, 409 N.W.2d 79 (N.D.1987); *State v. Olson*, 290 N.W.2d 664 (N.D.1980). A trial court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner. *State v. Kunkel*, 452 N.W.2d 337 (N.D.1990); *State v. Erban*, 429 N.W.2d 408 (N.D.1988)." *State v. Haugen*, 458 N.W.2d 288, 291 (N.D.1990). *See also First Nat'l Bank and Trust Co. v. Brakken*, 468 N.W.2d 633, 636 (N.D.1991); *State v. Martinsons*, 462 N.W.2d 458, 460 (N.D.1990).

We find no abuse of discretion in this instance. The trial court considered the arguments of both parties before ruling on the admissibility of the previous assaults on Kim by Gefroh. Furthermore, it limited the evidence to one incident, even though Kim claimed there were several. The trial court did not allow the State to delve into graphic details of the assault, but only to use the evidence as a brief background of the relationship between Kim and Gefroh.[4] The decision to allow the previous assault was not arbitrary, unconscionable, or unreasonable.

Additionally, the trial court based its decision to admit the evidence on Rule 404(b). The testimony of Gefroh's previous assault on Kim is admissible under the standards of that rule as well. In *State v. Stevens*, 238 N.W.2d 251 (N.D.1975), this Court scrutinized the admissibility of prior crimes or bad acts under Rule 404(b). At the outset, we stated that "evidence of prior acts or crimes cannot be received unless it is substantially relevant for some purpose other than to show a probability that a defendant committed a crime charged because he is a man of criminal character." *Id.* at 257. The analysis went on to recognize exceptions to the general rule, "allowing proof of other acts and offenses to show motive, intent, identity, scheme, or plan, and to show absence of mistake or accident." *Id.*

The *Stevens* opinion continued by enumerating criteria to be considered whenever Rule 404(b) is invoked. First, "a much stricter showing of relevancy is required to prove identity or the doing of the criminal act by the accused, than when it is offered to prove knowledge, intent, or state of mind." *Id.* Next, "there must be substantial evidence of prior similar acts," and the evidence must be clear and convincing. *Id.* Third, "there must be proof of commission of the crime charged." *Id.* Finally, the question is "one of balancing the aims of full disclosure and fairness to the defendant where they are in conflict. The basic question is fundamental fairness.... [T]he problem is not one of pigeonholing, but of balancing, of discretion rather than following a rule." *Id.* at 257–58.

Under these criteria, admission of Gefroh's previous assault on Kim was proper. Evidence of the prior bad act was clear and convincing because Gefroh had been criminally convicted for the assault. Furthermore, proof of the terrorizing charge itself was abundant. Lastly, the trial court balanced full disclosure with fairness to Gefroh and found disclosure of the charged assault to be the best alternative under the rule. The evidence of a previous assault was properly admitted to show Gefroh's intent or state of mind, and to give meaning to his threatening words. The evidence provided "a more complete story of the crime by putting it in context of happenings near in time and place." *State v. Biby*, 366 N.W.2d 460, 463 (N.D.1985) (quoting *State v. Frye*, 245 N.W.2d 878, 883 (N.D.1976)).

4. During its argument in favor of admitting evidence of prior assaults, the State asserted that such evidence was useful not only to show Gefroh's knowledge of his relationship with Kim, but also to prove Kim's state of mind. The State argued that the assaults proved that Kim was in fear of Gefroh's threats. This argument may have been misplaced. While Kim's state of mind certainly could be relevant to show the effect Gefroh may have intended by his threats, the State does not need to prove that the victim of the threats was, in fact, in fear. That is not an element of the offense of terrorizing. It is the defendant's state of mind and not the victim's state of mind that is at issue. *See* Section 12.1–17–04, N.D.C.C.; *State v. Hass*, 268 N.W.2d 456 (N.D.1978). *See also State v. Weippert*, 237 N.W.2d 1 (N.D.1975).

## II.

### SUFFICIENCY OF THE EVIDENCE

Gefroh's second issue on appeal is whether the trial court erred by dismissing his motion for judgment of acquittal under Rule 29(a), N.D.R.Crim.P.[5] We hold that the trial court did not err, and affirm it on this issue.

The standard of review for testing the sufficiency of the evidence requires us to draw all inferences in favor of the verdict.

"To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Raulston,* 475 N.W.2d 127, 128 (N.D.1991). The tasks of weighing the evidence and judging the credibility of witnesses belong to the jury. *State v. Lovejoy,* 464 N.W.2d 386, 388 (N.D.1990). On appeal, this court must assume that the jury believed the evidence which supports the verdict and disbelieved any contrary evidence. *State v. Manke,* 328 N.W.2d 799, 806 (N.D. 1982)."

*State v. Purdy,* 491 N.W.2d 402, 410 (N.D. 1992). *See also State v. Morstad,* 493 N.W.2d 645 (N.D.1992). A verdict for conviction "rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt" after drawing all inferences in favor of the verdict and viewing all evidence in a light most favorable to the prosecution. *State v. Schill,* 406 N.W.2d 660, 660 (N.D.1987).

■ Gefroh contends that the phrase "or not wake up at all" is not sufficiently definite to constitute the threat of a crime of violence or act dangerous to human life, as Section 12.1–17–04, N.D.C.C., requires. We disagree.

■ In his appellate brief, Gefroh has cited several cases from other states and the federal system wherein the threats amounting to terrorizing graphically and specifically described the dangerous acts or violent crimes. In light of these cases, Gefroh concludes that his words were not specific enough to form the basis for a terrorizing conviction. By making this argument, Gefroh ignores precedent of this Court in which we stated that threats do not need to be detailed and specific in order to establish an actionable offense.

"No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. *In re Burke,* 9 O.C.D. 350, 17 Cr.Ct.R., N.S., 315 (1899). A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited."

*State v. Howe,* 247 N.W.2d 647, 654 (N.D. 1976). *See also State v. Zeno,* 490 N.W.2d 707, 710 (N.D.1992); *State v. Haugen,* 392 N.W.2d 799, 805 (N.D.1986); *State v. Hass,* 268 N.W.2d 456, 463 (N.D.1978); *State v. Weippert,* 237 N.W.2d 1, 4 (N.D.1975).

When viewing the State's evidence under our standard of review, we find the elements of terrorizing clearly present in this case. The circumstances surrounding the statement are significant and must be considered. First, Gefroh had a history of harming Kim. Next, approximately one hour before the statement was made, Gefroh claimed he beheaded one kitten and then he brutally mutilated another. He did these things not only before Kim, but also in the presence of his five-year-old son, who was obviously experiencing distress during the episodes. Finally, after being told by authorities to cease further menacing contact with Kim and their sons, Gefroh tele-

---

5. After the State had rested but before presentation of the defense, Gefroh brought a motion for acquittal under Rule 29(a), N.D.R.Crim.P. In substance, the rule reads:

   "(a) *Motion Before Submission to Jury.* The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right."

phoned Kim, threatened property damage to her car, and then threatened that she would "not wake up at all." Uttered in the context of Gefroh's prior actions, and viewed in a light most favorable to the verdict, those words constituted a threat of a violent crime or dangerous act.

## III.

## ADMISSIBILITY OF PRIOR CONVICTIONS

■ The last issue on appeal is whether the trial court erred in allowing the State the opportunity to impeach Gefroh's testimony by introducing evidence of his prior felony convictions. We hold that the trial court did not err in its determination, and affirm.

After the State had rested, but before the presentation of the defense, the trial court held a conference in chambers concerning admissibility of Gefroh's felony record. Gefroh stated that he wished to testify on his own behalf, and the State expressed its intention to use Gefroh's felony record of three prior burglaries to impeach his credibility as a witness. Gefroh's counsel objected to the introduction of the felonies as being too prejudicial. After a lengthy discussion with both parties, plus independent research, the trial court decided to allow the State use of the prior burglary felonies to impeach Gefroh's testimony. Based upon this decision, Gefroh never took the stand.[6]

Rule 609(a), N.D.R.Ev., allows impeachment of an accused's testimony by evidence of a prior conviction, but imposes two different standards, depending upon the nature of the prior crime. The rule states:

"*(a) General Rule.* For the purpose of attacking the credibility of a witness, (i) evidence that a witness other than an accused has been convicted of a crime must be admitted, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime must be admitted if the court determines that the probative value of admitting that evidence outweighs its prejudicial effect to the accused; and (ii) evidence that any witness has been convicted of a crime must be admitted if it involved dishonesty or false statement, regardless of the punishment."

Since Gefroh's prior convictions of felony burglary are not ones necessarily involving dishonesty or false statements, they may be admitted only under Rule 609(a)(i). "We conclude that evidence of [the defendant's] prior convictions for burglary is not an indicium of a propensity toward testimonial dishonesty, and was not automatically admissible under 609(a)(2)." *State v. Eugene,* 340 N.W.2d 18, 33 (N.D.1983). *See also State v. Bohe,* 447 N.W.2d 277 (N.D. 1989).

Thus, the probative value of Gefroh's prior burglary convictions had to be weighed against their prejudicial effect for the trial court to determine their admissibility. "Rule 609(a)(i) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant." *State v. Eugene,* 340 N.W.2d at 33. *See also State v. Bohe,* 447 N.W.2d 277; *State v. Fuller,* 379 N.W.2d 289 (N.D.1985); *State v. Anderson,* 336 N.W.2d 123 (N.D.1983).

In *Anderson,* this Court articulated five factors a judge should take into account when balancing prejudicial effect and probative value. "Among these factors are

---

6. On appeal, Gefroh argues that the trial court's determination chilled his constitutional right to testify under the Fifth Amendment. This constitutional argument was not presented to the trial court. "Generally, issues not raised in the trial court, *even constitutional issues,* will not be addressed on appeal." *State v. Tweed,* 491 N.W.2d 412, 417 (N.D.1992) (quoting *State v. Miller,* 388 N.W.2d 522 (N.D.1986)). Even more dispositive of the argument are our opinions in *State v. Boushee,* 284 N.W.2d 423, 434 (N.D.1979) (a defendant is not entitled, before taking the witness stand, to a ruling on admissibility of his prior felony convictions), and *State v. Johnson,* 231 N.W.2d 180, 184 (N.D.1975) (defendants taking the witness stand may be cross-examined as to matters which tend to degrade them, including prior criminal acts).

the impeachment value of the prior crime, the point in time of the conviction and the witness's subsequent history, the similarity between the past crime and the charged crime, the importance of the defendant's testimony and the centrality of the credibility issue." *State v. Fuller,* 379 N.W.2d at 290 (citing *State v. Anderson,* 336 N.W.2d 123).

The trial court's discussion of the admissibility of Gefroh's prior felony convictions spans pages 98–106 in the trial transcript. In that discussion, the trial court cites both *Eugene* and *Bohe.* It lists and discusses all of the factors enumerated in *Anderson* and its progeny. The trial court found the credibility of the witnesses (Gefroh and Kim) to be particularly important because "this case comes down to one phone call, the [terrorizing] case, the phone call made by [Gefroh] to the complaining witness, Kim Getzlaff; her word against his."

The trial court ultimately determined that the probative value of Gefroh's prior convictions outweighed their prejudicial effect. It then sought to limit that effect, stating, "I'm going to rule that the State may use these convictions for impeachment purposes. However, I've always felt that one question will do it; maybe two. We don't need to get into detail. We don't need to get into the sentence, just 'were you.'" It is clear from the extensive discussion and deliberation by the trial court that its decision to admit the evidence of prior convictions was not reached simply and mechanically in this case. *See State v. Bohe,* 447 N.W.2d at 281; *State v. Fuller,* 379 N.W.2d at 290; *State v. Eugene,* 340 N.W.2d at 34; *State v. Anderson,* 336 N.W.2d at 126.

For the foregoing reasons, we affirm Gefroh's judgment of conviction for terrorizing entered by the District Court for Ramsey County.

VANDE WALLE, C.J., and MESCHKE, LEVINE and SANDSTROM, JJ., concur.