ACCEPTED
03-13-00760-CR
3627987
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/31/2014 12:16:54 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00760-CR

IN THE

THIRD COURT OF APPEALS

AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/31/2014 12:16:54 PM
JEFFREY D. KYLE
Clerk

---

**JAMES ARTHUR BROWN, Defendant-APPELLANT**

**vs.**

**THE STATE OF TEXAS, Plaintiff-APPELLEE**

---

**ON APPEAL FROM THE 331ST JUDICIAL DISTRICT**

**OF TRAVIS COUNTY, TEXAS**

**TRIAL COURT CAUSE NUMBER D-1-D-C-13.300630**

**THE HONORABLE DAVID CRAIN, PRESIDING JUDGE**

---

**APPELLANT'S BRIEF**

---

Brian Bernard
Bernard & Associates
1203 Baylor St.
Austin, TX 78703
Phone: 512.478.5291
Fax: 512.478.9827
Email: attorneybernard@yahoo.com

Tanisa Jeffers
Bernard & Associates
1203 Baylor St.
Austin, TX 78703
Phone: 512.478.3408
Fax: 512.478.9827
Email: tanisaL@hotmail.com

**ATTORNEYS FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellants:** JAMES ARTHUR BROWN

**Appellants' Counsel:**
Brian Y. Bernard
Tanisa Jeffers
Bernard & Associates
1203 Baylor St.
Austin, Texas 78703
(512) 478-5291
(512) 478-9827 Facsimile
Brian Y. Bernard
Tanisa Jeffers
attorneybernard@yahoo.com
tanisaL@hotmail.com

**Appellee:** TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE

**Appellee's Counsel:**
Rosemary Lehmberg
Office of the Travis County District Attorney
Appeal Division
P.O. Box 1748
Austin, Texas 78701
(512) 854-9400
(512) 854-9789 Facsimile
rosemary.lehmberg@traviscountytx.gov

# REQUEST FOR ORAL ARGUMENT

JAMES ARTHUR BROWN, Defendant-Appellant, respectfully requests oral argument. Oral discussion of the facts and the applicable precedent would benefit the Court.

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL................................................2.

REQUEST FOR ORAL ARGUMENT…………….…..…………….……………...3

TABLE OF CONTENTS…………….……………….……………………………4v

TABLE OF AUTHORITIES…………….……………….……………………….5

STATEMENT OF JURISDICTION…………….……………….……………7

STATEMENT OF THE CASE…………….……………..…………………….9

STATEMENT OF FACTS AND PROCEDURES…………….…..………….11

STATEMENT OF ISSUES PRESENTED…………….…………………..…8

   1. Was there insufficient evidence to convict Appellant of Retaliation pursuant to Texas Penal Code § 36.06?…………….……………….……………………….20

   2. Did the trial court err when it overruled Appellant's Motion to Quash Indictment? ……...36

   3. Was there ineffective assistance of counsel where trial counsel failed to withdraw and there was no hearing on Appellant's Motion for New Trial within the 75-day time period? ......36

SUMMARY OF ARGUMENT..................................................20

ARGUMENT AND AUTHORITIES ..................................................20

   1. Standard of Review. ..................................................21

   a. Legal Sufficiency…………….…………………..……...21

   b. Factual Sufficiency..................................................23

     i. Intentionally or Knowingly…………….……………….27

     ii. Harms or Threatens to Harm….....……………………28

     iii. Unlawful Act…………….……………….……………29

     iv. In Retaliation for or on Account of their Service as a Public Servant…..30

   c. The Video…………….……………….……………33

   2. Quash Indictment…………….……………..…………..35

   3. Ineffective Assistance…………….…………………….35

PRAYER FOR RELIEF..................................................41.

CERTIFICATE OF COMPLIANCE & SERVICE……………………………42

EXHIBIT A…………….……………….……………43

# TABLE OF AUTHORITIES

**CASES:**

Jackson v. State, 443 U.S. 307 (1979)**................................................................23**

Brooks v. State,  323 S.W.3d 893, 895 (Tex. Crim. App. 2010)**..............................23**

Herrin v. State, 125 S.W.3d 436, 439 (Tex.Crim.App.2002)**....................................23**

Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)**....................................23**

Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App.2000)**......................................23**

Clewis v. State,  922 S.W.2d 126, 129 (Tex. Crim. App. 1996)**..............................24**

In re B.M., 1 S.W.3d 204, 207 (Tex.App.-Tyler 1999)**.....................................22, 24**

Doyle v. State, 661 S.W.2d 726, 728 (Tex.Crim.App.1983) **....................................24**

Morrow v. State,  862 S.W.2d 612, 615 (Tex. Crim. App.1993)**.............................24**

Coward v. State, 931 S.W.2d 386, 389 (Tex. App.-Houston 1996)**.........................24**

Puckett v. State, 801 S.W.2d 188, 194 (Tex. App.-Houston 1990) **........................24**

Herrera v. State,  915 S.W.2d 94, 98 (Tex. App.-San Antonio 1996)**.....................24**

Santellan v. State,939 S.W.2d 155, 164 (Tex.Crim.App.1997)**………...………...26**

Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.2000)**………………...……26**

Goodman v. State,66 S.W.3d 283, 285 (Tex.Crim.App.2001)**…………………..26**

Zuniga v. State, 144 S.W.3d 477,  (Tex.Crim.App.2004)**………………………27**

Cada v. State, 334 S.W.3d 766, 770 (Tex.Crim.App.2011)**………………..……29**

Geick v. State,  349 S.W.3d 542, 546 (Tex. Crim. App. 2011)…………………..29

Planter v. State, 9 S.W.3d 156, 159 (Tex.Crim.App. 1999)**………………….......30**

Beltran v. State, 593 5 S.W.2d 688, 689 (Tex. Crim. App. 1980)**………..……….30**

Lebleu v. State, 192 S.W.3d 205 (Tex. App. Houston 2006)**…………………..…31**

Manemann v. State, 878 S.W.2d 334, 338 (Tex.App.-Austin 1994)**……………...32**

United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990)**………….32**

United States v. Mitchell, 812 F.2d 1250, 1255-56 (9th Cir.1987)**………..……....32**

State v. Weippert, 237 N.W.2d 1 (N.D.1975)**……………………………………..32**

Meyer v. State, 366 S.W.3d 728 (Tex. App. Texarkana 2012)**…………………..33**

Wright v. State, 979 S.W.2d 868, 869 (Tex.App. Beaumont 1998)**……………...34**

Stafford v. State, 948 S.W.2d 921, 923-24 (Tex. App. Texarkana 1997)**………...34**

McCoy v. State, 932 S.W.2d 720, 724 (Tex.App. Fort Worth 1996)**……………..34**

Wilkins v. State, 279 S.W.3d 701 (Tex. App. Amarillo 2007)**…………………...35**

In re M.M.R., 932 S.W.2d 112, 115 (Tex. App. El Paso 1996)**………………...35**

Wiggins v. State, 255 S.W.3d 766 (Tex. App. 2008)**……………………………..37**

Vinson v. State,  252 S.W.3d 336, 341 (Tex. Crim. App. 2008)**………………...38**

Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000)**……………...38**

Mayes v. State, 8 S.W.3d 354, 358-61 (Tex. App. Amarillo 1999)**……………...38**

United States v. Cruikshank, 92 U.S. 542 (1876)**………………………………40**

State v. Mays, 967 S.W.2d 404, 406 (Tex.Crim.App.1998)**............................40**
Taylor v. State, 637 S.W.2d 929, 930 (Tex. Crim. App. 1982)**.......................41**
Benson v. State, 661 S.W.2d 708 (Tex. Crim. App. 1983)...**........................41**
Saathoff v. State, 891 S. W. wd 264, 266 (Tex. Crim. App. 1994)**....................41**
Doyle v. State, 661 S.W.2d 726, 727 (Tex.Crim. App.1983)**.........................41**
Strickland v. Wasington, 466 U.S. 668, 692 (1984)**.................................41**
Rylander v. State, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003)**..................41**
Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App.1999)**........................41**

Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App.2001)**...........................43**
Smith v. Robbins, 528 U.S. 259 (2000)**........................................................43**

Burdine v. Johnson, 262 F. 3d 336, 345 (5th Cir. 2001)**..............................44**

United States v. Cronic, 466 U.S. 648, 659 (1984)**....................................44**
States v. Russell, 205 F.3d 768, 770-71 (5th Cir. 2000) **.........................44**
Cooks v. State, 240 S.W.3d 906, 911 (Tex.Crim.App. 2007) ...**.....................44**
Massingill v. State, 8 S.W.3d 733 (Tex.App.-Austin 1999) **..........................46**
Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983) **..........................46**

**STATUTES:**

Texas Penal Code § 6.03(a)**.........................................................30**
Texas Penal Code § 36.06**...........................................................28, 30**
Texas Penal Code § 1.07(48)**.......................................................33**
Tex. Penal Code Ann. § 2.01**........................................................34**
U.S. Const. Amendment VI**..........................................................40**
Tex. Const. art. I., § 10**...............................................................40**
Tex.Code Crim.Proc.Ann. § 1.05**...................................................40**
Tex.Code Crim.Proc.Ann. § 21.04**..................................................40**
Tex.Code Crim.Proc.Ann. § 21.11**..................................................40**
Tex.R.App.P. 21.4(a)**.................................................................44**
Tex.R.App.P. 21.8(c)**.................................................................45[1]**

---

[1] **Reference**: Designation of record and transcript are as follows: **RR**=Reporter's Record (or Trial Transcript), **CR**=Clerk's Record

## **STATEMENT OF JURISDICTION**

Jurisdiction of this Court is invoked under rules 4.03 and 4.04 of Texas Code of Criminal Procedure as an appeal from a final conviction and sentence in 331st Judicial District for the State of Texas. Notice of appeal was timely filed in accordance with Rule 26.2 of the Texas Rules of Appellate Procedure.

IN THE

THIRD COURT OF APPEALS

AT AUSTIN, TEXAS

---

**JAMES ARTHUR BROWN, Defendant-APPELLANT**

**vs.**

**THE STATE OF TEXAS, PLAINTIFF-APPELLEE**

---

**BRIEF OF APPELLANT**

---

TO THE HONORABLE JUDGES OF THE THIRD COURT OF APPEALS:

JAMES ARTHUR BROWN, by and through the undersigned counsel, files this brief in appeal of his conviction and sentence in the district court and, in support, offers the following:

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

I. Did the trial court err when it determined there was sufficient evidence to convict appellant for the offense of Retaliation pursuant to Texas Penal Code §36.06?

II. Did the trial court err when it overruled Appellant's Motion to Quash Indictment?

III. Was there ineffective assistance of counsel where trial counsel failed to withdraw and there was no hearing held on Appellant's Motion for New Trial within the 75-day time period?

## STATEMENT OF THE CASE

Appellant James Arthur Brown was charged with Retaliation, a third degree felony, under cause number D-1-D-C-13-300630 on March 28, 2013. The warrant was executed on April 5, 2013 (CR . 8). Brown was assigned court appointed counsel on May 1, 2013.

On May 29, 2013 a Travis County Grand Jury returned an indictment charging Brown with Obstructive Retaliation.

Appellant James Arthur Brown was arrested and charged with Retaliation under cause number D-1-D-C-13-300630 on April 5, 2013. (CR p. 6). Brown was assigned court appointed counsel on May 1, 2013. Due to the nature of the case and the classification of the alleged victims as public servants, Special Prosecutor Colby Holcomb was appointed to prosecute the case on April 5, 2013. (CR p. 10).

Prior to indictment Brown filed a series of motions. On May 15, 2013 Brown filed a pro se Motion Requesting Examining Trial (CR p. 13). Brown's Motion Requesting Examining Trial was not ruled upon by the trial

9

court at that time. (CR p. 15). On May 17, 2013 Brown filed a pro se <u>Motion Requesting Speedy Trial</u> (CR p. 16). Brown's <u>Motion Requesting Speedy Trial</u> was not ruled upon by the trial judge at that time. (CR p. 18). On May 29, 2013 a Travis County Grand Jury returned a three-count indictment charging Brown with Retaliation. (CR p. 19). Thereafter, Brown filed a pro se <u>Motion for Discovery</u> (CR p. 21). Brown was notified that the case was indicted on June 5, 2013. (CR p. 26).

Recognizing there would possibly be disputed issues of fact, Brown's court appointed counsel filed a <u>Motion for the Appointment of an Investigator</u>. Said motion was granted by the trial court on May 30, 2013. (CR p. 27). Brown filed a pro se <u>Motion for Reduction of Bond</u> and <u>Motion to Suppress Evidence</u> on July 12, 2013 (CR p. 28, 31). Brown's pro se <u>Motion for Reduction of Bond</u> and <u>Motion to Suppress Evidence</u> were not ruled upon by the trial court at that time. (CR p. 30, 32). Brown waived his right to a jury trial at arraignment. (CR p. 33-34).

Brown continued filing pro se motions, filing <u>Motions to Quash Indictment</u> on September 4, 2013 and October 9, 2013. (CR p. 35, 42). Brown's pro se <u>Motions to Quash Indictment</u> were not ruled upon by the trial court at that time. (CR p. 39, 46). Brown's court appointed counsel filed a <u>Motion to Have the Defendant Examined by a Psychiatrist</u> on September 4,

2013. (CR p. 40). Said motion was granted by the trial court. (CR p. 41). After having waived his right to a jury trial, a trial before the court began on October 23, 2014. Brown was found guilty and sentenced to 15 years in the Texas Department of Correction. (CR p. 52).

Brown's trial attorney file a Motion for New Trial on October 31, 2013. (CR p. 59). Brown filed a pro se Motion for New Trial as well on November 1, 2013. (CR p. 61). In conjunction with the Motion for New Trial, Brown filed pro se Motions for Free Appellate Record, Motion to Appeal, Motion for Appointment of Counsel on Appeal, Memorandum of Law and Notice of Appeal on November 8, 2013. (CR p. 68, 71, 77, 81, 83). This appeal followed, having been timely filed on November 8, 2013 (CR p. 83).

A bench warrant was issued for Brown ordering him to attend a Designation hearing on January 8, 2014. (CR p. 100). Brown's previous trial attorney was reappointed as trial counsel on January 7, 2014 (CR p. 103) and this appellate counsel appointed on January 16, 2014. (CR p. 105). Appellate counsel filed her own Notice of Appeal on January 30, 2014. (CR p. 107). Thereafter, Brown filed an Amended Appellant's Brief where he detailed in eight points of error why he believed his conviction should be overturned. (CR p. 109-148). Trial counsel filed a Motion for Additional Funds for

11

Investigator on February 3, 2014 that was granted by the trial court. (CR. p. 149, 151). Trial counsel filed a Motion for Withdrawal that was granted April 4, 2014. (Supp. CR p. 3, 5). This appellate counsel was reappointed as appellate counsel for procedural purposes on April 4, 2014. (Supp. CR p. 6).

## STATEMENT OF FACTS AND PROCEDURES

On April 5, 2013 Brown was arrested for Retaliation stemming from an incident occurring after his parental rights were terminated as to his eldest daughter, three-year-old Layla. (CR p. 6). Once the jury returned a verdict terminating his parental rights, it was alleged that Brown "stormed" out the courtroom Id. As he waited at the elevator he allegedly hurled threats at 1. Jannice Joseph, the Assistant District Attorney who prosecuted the case; 2. Sara Laney, the CPS caseworker; and 3. Cynthia Dyar, the Attorney ad litem for the child. Id. The threats, according to the alleged victims, involved the following language:

> *"I know where you live…*
>
> *I'm coming for you…*
>
> *I am getting the electric chair…*
>
> *My life is over…"* Id.

12

Brown was appointed counsel on May 1, 2013. Prior to indictment, Brown filed pro se Motions Requesting an Examining Trial and Motion for Speedy Trial. (CR pgs. 13, 15). Neither motion was ruled upon by the trial court at that time. (CR pgs. 15, 18). A three-count indictment alleging Brown committed the offense of Retaliation was returned by a Travis County Grand Jury on May 29, 2013. (CR p. 19). Thereafter, Brown filed a pro se Motion for Discovery (CR p. 21). It does not appear that the trial court entered a *Standing Discovery Order*.

Recognizing there would possibly be disputed issues of fact, Brown's court appointed counsel filed a Motion for the Appointment of an Investigator. Said motion was granted by the trial court on May 30, 2013 (CR p. 27). Brown filed pro se Motions for Reduction of Bond and Motion to Suppress Evidence on July 12, 2013 (CR pgs. 28, 31) which do not appear to have been ruled upon by the court at that time. (CR pgs. 30, 32).

Brown also filed pro se Motions to Quash Indictment on September 4, 2013 and October 9, 2013 (CR pgs. 35, 42) which also do not appear to have been ruled upon by the court at that time. (CR pgs. 39, 46). Brown's court appointed counsel filed a Motion to Have the Defendant Examined by a Psychiatrist on September 4, 2013 to determine if competency was an issue (CR p. 40). Said motion was granted by the trial court (CR p. 41). After

13

having waived his right to a jury trial at arraignment, a trial before the court began on October 23, 2014. Brown was found guilty and sentenced to 15 years in the Texas Department of Correction (CR p. 52).

A trial before the court was commenced on October 23, 2013. The court overruled all pretrial motions at that time. The state called Attorney ad Litem Cynthia Dyar as its first witness (RR p. 10, line 22). Ms. Dyar testified that she represented Mr. Brown's oldest child, Layla who was removed from her parents because of abuse and neglect allegations. (RR. p. 11, line 1). Ms Dyar testified that after the verdict was read Mr. Brown "stormed" out the courtroom with his mother before the entire verdict was read. (RR p. 16, lines 3-8). Ms. Dyar testified that once she, Ms. Joseph and Ms. Laney left the courtroom and entered the hallway that Mr. Brown started "screaming" at us "I'll get the electric chair for what I do." (RR p.17, lines 4-6; RR p. 21, line24). Ms. Dyar testified that as Sheriff's deputies stood between both she, the other ladies and Mr. Brown that Mr. Brown said "I know where you live" on more than one occasion, that "his life was over" and that the state "would not get his other daughter." (RR p. 22, lines 1-5). Ms. Dyar testified that although Mr. Brown did not say her name and sheriff's deputies were in between the two parties she felt the threats were intended for her and that it was the "scariest thing someone has said to me."

14

(RR. p. 22, lines 24-25; RR p. 24, lines 1-2). Ms. Dyar testified that the courthouse security video gives only "partial angles," but that Mr. Brown was "agitated, pacing back and forth" in front of the elevator and then got on the elevator once it opened. (RR p. 27, lines 2-6). On cross examination, Ms Dyar admitted that Mr. Brown did not threaten the three ladies specifically, that he never said "I'm coming--" and that he was expressing his grief, but she still felt threatened (RR p. 30. lines 24-25; RR p. 31, lines 1-2); RR p. 31, lines 14-15 & 23-25). Despite feeling threatened, a representative from Ms. Dyar's office again attended court with Mr. Brown a few days later. She also admitted and that it was possible Mr. Brown was hitting the elevator button as he "paced" in the hallway and that Mr. Brown was only in the hallway 45 seconds. (RR p. 32, lines 7-16; RR p. 33, lines 20-21; RR p. 34, lines 6-7).

Sara Laney, CPS caseworker testified that Mr. Brown appeared agitated as he waited for the elevator with sheriff's deputies standing between her and the other ladies and began making threats that appeared to be directed at the three ladies because he "was looking directly at us" (RR p. 38, lines 24-25; RR p. 39, lines 1-3). Ms. Laney testified that he repeated "I don't care if I get the electric chair, I know where you live, let them arrest

me." (RR p. 39, lines 13-19). She testified that she was scared because CPS parents such as Mr. Brown *could* know where she lived since she transports their children in her personal vehicle and that until the day Mr. Brown was arrested the police routinely checked on her well being while at home. (RR p. 40, lines 23-25; RR p. 41, lines 2-10; RR p. 41, lines 6-12). On cross examination, Ms. Laney admitted that Mr. Brown called her right before trial and said "take my baby, see what happens" which also made her "uncomfortable." (RR p. p. 42, lines 14-16). Ms. Laney admitted that her back was to him when he started yelling and that he was closer to the sheriff's deputies than he was to she and the other two alleged victims. (RR p. 46, lines 10-12: RR p. 48, lines 22-25). Ms. Laney also testified that Mr. Brown said something to the extent of "they've taken my babies, my life is over." (RR p. 49, lines 18-21).

Assistant District Attorney Jannice Joseph testified that Mr. Brown's behavior was "up and down" during the trial, that sometimes he was "fine" and that he made some outbursts during the state's closing arguments, but she became more concerned when she thought she saw him "write down the foster mothers information." (RR p. 54, lines 15-23); (RR p. 55, lines 13-16 & lines 21-23). She testified that Mr. Brown "stormed out" while the judge was still speaking, that the distance between she and he was less than thirty

16

feet and that he was obviously "angry and upset" when he began muttering "I know where you live…I got D and E so Ariana [defendant's younger daughter who was not a party to this case] is gone…My life is over, I'm going to get the electric chair." (RR p. 57, lines 16-19): (RR p. 60, lines 19-23); (RR p. 61, lines 6-9); (RR p. 61, lines 20-23 & p. 62, lines 1-6). Ms. Joseph testified that "he looked right at her" as he uttered those words, making her "concerned for her safety" even while Mr. Brown's mother attempted to calm him, telling him to stop because "nobody is going to do anything." (RR p. 62, lines 9-12; lines 17-19 & lines 21-25).

On cross-examination Ms. Joseph testified that prior to this incident she witnessed Mr. Brown "intimidate" the caseworker once through his "mannerism" after a ruling he didn't like, but that he didn't overtly "say anything." (RR p. lines 11-12 & lines 21-22). She went on to testify that it would surprise her to hear sheriff's deputies present at the time of the incident testify that Mr. Brown was not "threatening anyone," was instead "blowing off steam" and that he "was talking to his mother" and not to [them]. (RR. p. 66, lines 6-9 & 12-15). Ms. Joseph further testified that very soon after this incident she also attended another hearing with Mr. Brown where "he was in the same room with her," exhibited no threatening behavior to anyone present and that the threats she felt he made in the instant

case were "implied and not direct." (RR p. 67, lines 8-19 & lines 12-25).

Defense counsel moved for a directed verdict based on State of Texas v. Connick, _____. (RR p. 69, lines 15-24). The state opposed, arguing that the evidence showed defendant threatened assault and aggravated assault when he said he would get "the electric chair." (RR p. 70, lines 21-25; RR p. 71, lines 1-4). After a short recess, the court denied the motion for directed verdict distinguishing the authority defense relied upon by noting it was "a different type of witness" and that in the instant case a "whole range of threats from assault to murder" had allegedly been made. (RR p. 71, lines 15-25).

The defense called Deputy Melissa Slone as its first witness. Ms. Slone testified that as Mr. Brown pushed the button for the elevator he was upset, but quiet when he left the courtroom with his mother, that is until the three alleged victims entered the corridor where he waited for the elevator. (RR p. 77, lines 19-23, RR p. 78, lines 5-8). The deputy testified that his speech became more elevated at the alleged victims appearance outside the courtroom and said "I can't live without my kids" and "I know where you work." (RR p. 80, lines 2-6 & lines 9-11). But the deputy also believed Mr. Brown was "talking to his mother" as that is "who he was looking at," but "he was talking loud enough to where everybody could hear." (RR p. 81,

18

lines 5-10). Deputy Slone thought it "understandable" that Mr. Brown was upset, did hear him say "I know where you work," but felt that the ladies were safe and not under any threat. (RR p. 82, lines 7-9, lines 20-22; lines 4-6). On redirect she also admitted that the entire incident lasted "less than a minute," and that she had in fact "observed the entire incident." (RR p. 85, lines 6-7 & lines 8-11).

The defense next called Deputy Porsche Arnold to the stand. She testified that she did not think Mr. Brown should have been arrested as he was simply grieving over the loss of his child. (RR p. 86-87, lines 23-25 & lines 1-2; RR p. 87, lines 3-11). On cross, Deputy Arnold testified that the alleged victims told her "Mr. Brown said 'I know where you live,' but that she herself had not heard him say that. (RR p. 88, lines 16-22). She also testified that Mr. Brown was looking at everyone in the corridor, not just the alleged victims as he made the alleged inflammatory statements, i.e. he was looking at "everybody…the ladies, me, his mom, everybody that was out there," while he repeatedly pushed the elevator button ultimately taking the first elevator that arrived. (RR p. 88, lines 3-6; RR p. 90, lines 1-5).

The defense called Deputy Christopher Duncan, an 18-year veteran of the department, who testified that he overheard Mr. Brown say "I'm not afraid of dying," but did not overhear Mr. Brown say "I know where you

live." (RR p. 92, lines 6-14). Deputy Duncan also did not feel that Mr. Brown should have been arrested as he heard no threats and felt Mr. Brown was simply upset over the result of the termination hearing. (RR p. 92 lines 15-21). On cross, Deputy Duncan also reiterated that Mr. Brown said he was not afraid to die and that "he wasn't afraid of the electric chair" as he stood between Mr. Brown and the three ladies. (RR p. 93, lines 7-9 & lines 18-21).

Despite defense counsel's advice to the contrary, Mr. Brown chose to testify on his own behalf. Mr. Brown testified that he was talking to his mother about filing a lawsuit as he waited for the elevator saying once I file "they're going to want to give me the electric chair when I'm done." (RR p. 95, lines 15-21). Mr. Brown testified that as he was talking to his mother he 1. never spoke of harming anyone; Id. 2. never said "I know where you live." (RR p. 96, lines 11-14); 3. and never said "I am not afraid of dying, I'm coming for you" or "When I come to your house they'll arrest me." (RR p. 96, lines 20-25; RR p. 97, lines 1-9), but did say "they're going to want to give me the electric chair, they took my babies" and "my life is over if my kids are gone," (RR p. 96, lines 17-19). In response his mother said "be quiet they're going to take you to jail" which prompted him to say "I'm not afraid of going to jail." (RR p. 98, lines 12-17). In reference to the comment regarding the electric chair, he admitted to speaking "figuratively." (RR p.

20

98, lines 6-10). He also admitted to making the "electric chair" comment in civil court as well, but was not arrested saying he felt that with this arrest the state "was trying to prove a point." (RR p. 98, lines 18-25). Mr. Brown testified that he never said he would hurt anyone and that he wasn't planning to hurt anyone. (RR p. 99, lines 4-15).

Mr. Brown admitted he had changed his life, quit selling drugs, became a licensed HVAC technician, was gainfully employed, but "still drank and smoked a little powder," but then quit for the sake of his children. (RR p.100, lines 6-16). On cross-examination he testified that he never said "take my baby, see what happens" to the caseworker. (RR p. 101, lines 11-12) and that as he spoke, he never looked at the three ladies because "his back was to them" (RR p. 103, lines 6-10).

At sentencing the defense called Tiffany Boyden, the mother of Brown's children. (RR p. 115, lines 8-13). At the point she takes the stand, Brown calls the judge a "racist" in open court and is removed from the courtroom. (RR p. 116, lines 5-13). Boyden testified that Brown was suicidal, not homicidal after the jury's verdict and felt his "life was over." (RR p. 116, lines 23-25). Boyden went on to testify that despite the State's contention, Brown was not a violent man and had never "put his hands on me" in the five years that she had known him. (RR p. 118, lines 4-8). Lastly,

Boyden testified that the day of the termination hearing Brown had not eaten the entire day because he had no money, that she walked 15 blocks from her home to bring him a burger once the jury returned a verdict, and that they left the courthouse together "crying" because of the loss of their child. (RR p. 119, lines 3-13). In closing argument that State asked for 16 years in prison, Boyden becomes upset and is removed from the courtroom. (RR p. 121, lines 17-25; p, 122 lines 1-5). Brown continues to be disruptive in the jail behind the courtroom, The judge reiterates that Brown made a "racially offensive" remark and sentences him to 15 years in the Texas Department of Correction. (RR p. 123, lines 7-25).


## SUMMARY OF ARGUMENT

Brown was unlawfully convicted of Retaliation pursuant to Texas Penal Code 36.06(a)(1)(a) as there was insufficient evidence to support the conviction. Brown was denied effective assistance of counsel during a critical stage of his defense as he was essentially unrepresented during the 75-day time period in which to have a hearing on his Motion for New Trial.

# ARGUMENT AND AUTHORITIES

## I. The trial court erred as there was insufficient evidence to convict Appellant of Retaliation pursuant to Texas Penal Code § 36.06.

### a.    THE EVIDENCE LACKS LEGAL SUFFICIENCY

In evaluating sufficiency of the evidence, the standards for review are well established. In applying a legal sufficiency standard, courts review all the evidence "most favorable to the verdict and decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979); Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); See also Herrin v. State, 125 S.W.3d 436, 439 (Tex.Crim.App.2002).

Deference is given to the trier of fact in resolving conflicts in testimony, weighing the evidence and drawing reasonable inferences between the facts. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318-19). Any inconsistencies in the evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App.2000). In evaluating factual sufficiency, courts review all the testimony and evidence "without construing it favorably to either party and can set aside a verdict only if it is so contrary to the overwhelming

23

weight of the evidence as to be clearly wrong and unjust." Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

The offense of retaliation involves global factors. The statute's purpose is to encourage "a certain class of citizens to perform vital public duties without fear of retribution." In re B.M., 1 S.W.3d 204, 207 (Tex.App.-Tyler 1999) (quoting Doyle v. State, 661 S.W.2d 726, 728 (Tex.Crim.App.1983). The vital public duties include "reporting criminal activities, testifying in official proceedings, or cooperating with the government in a criminal investigation." Morrow v. State, 862 S.W.2d 612, 615 (Tex. Crim. App.1993).

The threatened retaliatory harm need not be imminent nor must the defendant intend to carry out his threat. B.M., 1 S.W.3d at 207; Coward v. State, 931 S.W.2d 386, 389 (Tex. App.-Houston 1996); Puckett v. State, 801 S.W.2d 188, 194 (Tex. App.-Houston 1990). The offense of retaliation is a result-oriented offense where the focus is on whether the behavior is done with an intent "to effect the result specified in the statute." Herrera v. State, 915 S.W.2d 94, 98 (Tex. App.-San Antonio 1996).

Brown challenges the legal sufficiency of the evidence that he threatened to harm Dyar, Laney and Joseph. Dyar, Laney and Joseph testified that they heard him say "I know where you work," "I'm gonna get the electric chair" and "my life is over." (RR p. 22, lines 1-5); (RR p. 39, lines 13-19); and (RR p. 57, lines 16-19), (RR p. 60, lines 19-23), (RR p. 61, lines 6-9), (RR p. 61, lines 20-23 & p. 62, lines 1-6). The three victims testified that they took those statements as threats because of the ruling just minutes before terminating Brown's rights as to his 3-year-old daughter, Layla. As further evidence of legal insufficiency, Brown points to the testimony of officers Slone, Arnold and Duncan who all testified that they did not feel Brown had done or said anything "that would have resulted in an arrest." (RR p. 82, lines 7-9, lines 20-22; lines 4-6); (RR p. 86-87, lines 23-25 & lines 1-2; RR p. 87, lines 3-11); and (RR p. 92 lines 15-21).

Brown also challenges the legal sufficiency of the evidence that he intended to retaliate against Dyar, Laney and Joseph because of their work on his daughter's parental rights termination case. Brown testified that he had "just lost his child' and that because of that "he felt his life was over." (RR p. 96, lines 17-19). Brown testified that "no one threatened nobody." (RR p. 99, lines 4-15). As further evidence of his non-retaliation, Brown points to the testimony of officers Arnold and Duncan who said they felt

Brown was only "grieving" when he made the inflammatory statements. (RR p. 86-87, lines 23-25 & lines 1-2; RR p. 87, lines 3-11); and (RR p. 92 lines 15-21).

As to each of Brown's challenges to the legal sufficiency of the evidence, even when viewing the evidence in the light most favorable to the State, we believe a rational factfinder did not have enough evidence to convict Brown of retaliation beyond a reasonable doubt. Thus, Brown maintains the evidence was legally insufficient.

### b. THE EVIDENCE LACKS FACTUAL SUFFICIENCY

In evaluating factual sufficiency of the evidence, courts first assume that the evidence is legally sufficient. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). However, in regards to factual sufficiency, a neutral review of the evidence must demonstrate that the proof of guilt is either 1. so weak as to undermine confidence in the jury's determination; or 2. is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.2000); *See* also Goodman v. State, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). Thus, there are two ways in which the evidence may be factually insufficient.

26

> "First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand." <u>Zuniga v. State</u>, 144 S.W.3d 477, (Tex.Crim.App.2004).

Brown challenges the factual sufficiency of the evidence that he threatened to harm Dyar, Laney and Joseph. Contrary to the testimony of the three victims that Brown threatened assault and aggravated assault when he said "I'm gonna get the electric chair," Brown points out that he was talking to his mother about filing a lawsuit as he waited for the elevator saying once I file "they're going to want to give me the electric chair when I'm done." (RR p. 95, lines 15-21).[2] Brown testified that as he was talking to his mother he 1. never spoke of harming anyone; Id. 2. never said "I know where you live." (RR p. 96, lines 11-14); 3. and never said "I am not afraid of dying, I'm coming for you" or "When I come to your house they'll arrest me." (RR p. 96, lines 20-25; RR p. 97, lines 1-9). Accordingly, Brown believes that the evidence was factually too weak to support the verdict.

---

[2] This attorney has determined that Brown did in fact file a lawsuit against the State of Texas in regards to his parental rights termination lawsuit under cause number _____.

Furthermore, Brown challenges the factual sufficiency of the evidence that he intended to retaliate against Dyar, Laney and Joseph, arguing that the proof of those elements is outweighed by contrary proof. In addition to Brown's own testimony, Officer Slone testified as to Brown's lack of intent, testifying that she thought it "understandable" that Mr. Brown was upset and felt that the ladies were safe and not under any threat. (RR p. 82, lines 7-9, lines 20-22; lines 4-6).

Officer Arnold also testified as to Brown's lack of intent at retaliation, testifying that Brown did not look only at the victims, but everyone in the corridor as he made the inflammatory statements and believed Brown was simply "grieving" over the loss of his child. (RR p. 86-87, lines 23-25 & lines 1-2; RR p. 87, lines 3-11). Officer Duncan testified as well as to Brown's lack of intent saying under oath that he did not hear Brown make any threats and that he felt Brown was simply "upset" over the result of the termination hearing. (RR p. 92 lines 15-21). Accordingly, Brown believes the evidence was so factually weak as to undermine confidence in the verdict.

Section §36.06 has been described as a good example of the `Chinese Menu' style of alleging the elements of a penal offense" by the Texas Court

of Criminal Appeals. <u>Cada v. State</u>, 334 S.W.3d 766, 770 (Tex.Crim.App.2011); <u>Geick v. State</u>, 349 S.W.3d 542, 546 (Tex. Crim. App. 2011). Several of the elements present alternatives for charging the offense. <u>Cada</u>, 332 S.W.3d at 770. The elements and alternatives of the offense of retaliation are:

(1) The Defendant
(2)  a. intentionally (or)
      b. knowingly
(3)  a. harms (or)
      b. threatens to harm
(4) another person
(5) by an unlawful act
(6)  a. in retaliation for (or)
      b. on account of
(7)  a. the service of another (or)
      b. the status of another
(8) as a
      a. public servant
      b. witness
      c. prospective witness [or]
   c. informant. <u>Id</u>.

The State must allege at least one item from each numbered category. <u>Id</u>. The elements can be plead in combination and "it is sufficient if the proof at trial establishes any one of the alleged alternative elements beyond a reasonable doubt." <u>Id</u>. at 770-71. We measure the sufficiency of the evidence by the specific alternative elements alleged by the State in the charging instrument. <u>Id</u>. at 773-74. No other elements are considered. <u>Id</u>. at

774 (citing <u>Planter v. State</u>, <u>9 S.W.3d 156, 159</u> (Tex.Crim.App. 1999) (State's evidence was insufficient to prove the one theory of solicitation of capital murder that it had alleged even though it was sufficient to prove the unplead statutory alternative). Due process requires the State to prove each element of the offense alleged beyond a reasonable doubt. <u>Id</u>. at 774, 776.

i.      INTENTIONALLY OR KNOWINGLY

A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. <u>Texas Penal Code</u> § 6.03(a). A person acts knowingly when he is aware of the nature of his conduct or that his conduct is reasonably certain to cause the result. <u>Id</u>. § 6.03(b). Intent can be inferred from the acts, words, and conduct of the accused. See <u>Beltran v. State</u>, 593 5 S.W.2d 688, 689 (Tex. Crim. App. 1980). Under § 36.06 if the act is done negligently or recklessly, it is not an illegal act. See TEX. PENAL CODE ANN. § 36.06(a)(1)(A).

Brown argues that he did not act intentionally as he made the inflammatory comments just moments after hearing a jury verdict terminating his parental rights. He was emotional as he vented to his mother

30

while waiting for the elevator and felt "his life was over." (RR p. 96, lines 17-19). There was no "conscious desire" to retaliate against the three victims as he made promises to his mother to file a lawsuit. Nor did Brown act knowingly as he made the inflammatory comments as that would require that he be "aware that his conduct is reasonably certain to cause another" to feel retaliated against. Brown would argue that a person who has just lost his child should be entitled to verbally grieve. Even three deputies charged with the duty of safety and security all agree that Brown was doing just that, simply grieving. The defense presented evidence showing Brown made "off-hand, one-time statements in anger" immediately after a ruling, and those statements were "never uttered again." *See* Lebleu *v.* State, 192 S.W.3d 205 (Tex. App. Houston 2006)(Evidence sufficient for conviction of retaliation where appellant did not make off-hand, one-time statements in anger immediately following a ruling, but made several statements over a period of time).

ii.     HARMS OR THREATENS TO HARM

The record has established that Brown did not actually harm Dyar, Laney and Joseph. However, a threat is a communicated intent to inflict harm. See BLACK'S LAW DICTIONARY 1519 (8th ed.2004). The word

31

threat is not defined under section 36.06. See §36.06. In determining if a statement should be considered a threat, courts look at both the context in which the comments were made and the language used. Manemann v. State, 878 S.W.2d 334, 338 (Tex.App.-Austin 1994). In determining if the subject comment is a threat, an objective standard is used, namely "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990); United States v. Mitchell, 812 F.2d 1250, 1255-56 (9th Cir.1987). The test is whether a threat justifies fear by an *ordinary* hearer, not whether the threat *caused* a specific listener to actually become fearful. State v. Weippert, 237 N.W.2d 1 (N.D.1975)(emphasis added).

Dyar, Laney and Joseph testified that Brown said "I know where you work" and "I'm gonna get the electric chair." – just moments after hearing the jury verdicts which terminated his parental rights as to his oldest child. Though these words may have caused the three to feel fear, the test is whether an *ordinary* hearer would be fearful. Brown argues that there were three other *ordinary* hearers in the corridor that day, namely the three

32

deputies who overheard his comments and who all agreed that Brown neither did or said anything that justified him being convicted of a felony retaliation charge. Accordingly, we believe the State failed to prove this element of the offense.

### iii.    …ANOTHER BY AN UNLAWFUL ACT:

"Unlawful" is defined as "criminal, tortious or both and includes what would be criminal or tortious, but for a defense not amounting to justification or privilege." Texas Penal Code § 1.07(48). In the instant case, the indictment alleged the threatened "unlawful act" to be assault and aggravated assault. (CR p. 19). The State presented evidence that because Brown said in some context "I'm gonna get the electric chair" that actions which garner the electric chair amount to some form of assault or aggravated assault. (RR p. 71, lines 23-25; p. 72, lines 1-2). However, Brown contends that the missing element of proof is any evidence that his words threatened unlawful action, especially where he testifies his exact statement was "once I file a lawsuit, they're going to give me the electric chair." (RR p. 95, lines 15-21). *See* Meyer *v.* State, 366 S.W.3d 728 (Tex. App. Texarkana 2012), (Insufficient evidence of retaliation where defendant sends a letter to the

judge not threatening unlawful action, but threatening both criminal prosecution and civil action against those who violate his rights).

iv.     IN RETALIATION FOR OR ON ACCOUNT OF THEIR SERVICE AS A PUBLIC SERVANT

The Texas Penal Code requires that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." Tex. Penal Code Ann. § 2.01. The Texas Courts of Appeals require that the State present evidence that the unlawful act was "in retaliation for or on account of the service or status of a public servant," i.e. the State must prove a retributory intent element. As to the interpretation of this section of 36.06, the Texas Courts of Appeals are split. Some courts require that the retributory intent be based on duties "already performed" by the public servant while other courts believe the retributory intent can be performed "at the same time" as the discharge of duties.  See Wright v. State, 979 S.W.2d 868, 869 (Tex.App. Beaumont 1998) (where Riley v. State, 965 S.W.2d 1, 2 (Tex.App. Houston 1997), required "a retributive attack for duties already performed," v. Stafford v. State, 948 S.W.2d 921, 923-24 (Tex. App. Texarkana 1997), and McCoy v. State, 932 S.W.2d 720, 724 (Tex.App. Fort Worth 1996) (upheld convictions based upon a single incident). But see also

34

Wilkins v. State, 279 S.W.3d 701 (Tex. App. Amarillo 2007)(Evidence insufficient to revoke defendant's term of community supervison based on retaliation by a preponderence of the evidence where there was no evidence the threatening remark was made with the retaliatory intent of placing the hearer in fear of retribution for his public service as a district judge); In re M.M.R., 932 S.W.2d 112, 115 (Tex. App. El Paso 1996) (Evidence insufficient to show violation of §36.06 where it was not shown the assault occurred "on account of" the service of the public servant where juvenile was attempting to escape detention officer in order to continue fight with another detainee).

Whether this section of §36.06 requires that the retributory intent be based on public service duties "already performed" or "at the same time" as the discharge of duties, Brown believes there is insufficient evidence to prove either. Because 36.06 is a result oriented offense, the action criminalized is the threat to harm and the intent to inhibit public service by others. Thus, the focus is not on whether Brown made a threatening statement because of the work of Dyar, Laney and Joseph as public servants on Brown's parental rights termination case, but rather did Brown make his statements with the intent to inhibit Dyar, Laney and Joseph's service as a

public servant with knowledge that it was reasonably certain that his statement would inhibit Dyar, Laney and Joseph's service as a public servant? The record reflects that given the discovery of the Kaufman County murders just two days later-- Dyar, Laney and Joseph perceived Brown's comments as threats, but testified that the Kaufman murders did not effect their prosecution of this case. (RR p. 43, lines 7-9; p. 66, lines 23-25 & p. 67, line 1).[3] However, the record contains no evidence that Brown intended or was reasonably certain that his stated intent for "getting the electric chair" would in any way affect the performance or be on account of Dyar, Laney and Joseph's status as public servants or cause the three of them to fear retribution. Brown was simply grieving and contemplating filing a lawsuit.

Furthermore, the record shows that Brown left the courthouse as soon as the elevator arrived and that he had subsequent CPS hearings prior to his arrest for the instant offense where he showed no ire toward Dyar, Laney and Joseph and behaved appropriately. (RR p. 82, lines 1-6; RR p. 66, lines 20-22). Accordingly, we believe that no reasonable person could believe beyond a reasonable doubt that Brown made a threatening remark with the required retaliatory intent of placing Dyar, Laney and Joseph in fear of

[3] On March 30, 2013 just two days after Brown's termination hearing ended, the bodies of Kaufman County District Attorney Michael McClelland and his wife Cynthia were found in their home. Both had been shot and killed "execution-style." The case received widespread attention because it was initially thought the Aryan brotherhood was responsible, but later determined that a local Justice of the Peace was the culprit. http://dfw.cbslocal.com/2014/12/28/kim-williams-to-plead-guilty-for-her-part-in-kaufman-murders/

retribution as a result of their duty as public servants. Whether Dyar, Laney and Joseph were public servants or not, Brown would have made the same statements given that he felt his constitutional rights had been violated and that he felt "his life was over" at losing parental rights to 3-year-old Layla. *See* <u>Wiggins v. State</u>, 255 S.W.3d 766 (Tex. App. 2008)(Evidence sufficient for retaliation conviction where at arrest defendant espouses threats and threatening behaviors solely because of police officer's actions while acting as a public servant).

### C. THE VIDEO

THE DEFENDANT: That's not even the real video. My back was to them. They lying. Man, that's cold. They're going to find me guilty. (RR p. 74, lines 6-9)

MR. IVY: Mr. Brown has asked that I subpoena to this hearing the person with the most knowledge of the video operations at the old courthouse and the person who was responsible for deciding what video footage the Court got to see this morning. I've explained to Mr. Brown that I didn't think the Court would stand for that kind of subpoena, that it would be found irrelevant. So I did not.

THE COURT: Okay. (RR p. 74, lines 20-25)

When the record shows a trial court's ruling is based on a determination that could not have possibly been derived from facts developed during trial, the appellate court "must keenly review the issue." Vinson v. State, 252 S.W.3d 336, 341 (Tex. Crim. App. 2008).

In such an instance, should the appellate court affirm the trial court ruling, it commits error. Id. at 342. When objective evidence such as a video recording fails to support the trial court's ruling, appellate courts are justified in not giving deference to the trial court's ruling that are based on any portion of the record contrary to what is objectively shown on the video recording. *See* Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *See* also Mayes v. State, 8 S.W.3d 354, 358-61 (Tex. App. Amarillo 1999).

State's Exhibit 4 is a video purporting to show some version of the events which are the subject of Brown's conviction. Part I shows someone who appears to be Mr. Brown exiting the courtroom. (RR at 12.11.28). However, the video is cropped in such a way that you can not see whether it is actually him. Next the video shows Brown appearing to exit again with his civil trial counsel. (RR at 12.11.54). A Sheriff's deputy follows moments later. (RR at 12.12.07). Three Sheriff's deputies appear to leave the courtroom followed closely by Dyar, Laney and Joseph. (RR at 12.12.45).

Part 2 shows the elevator opening and closing on two separate occasions. (RR at 12.12.04 and 12.12.22). Brown appears in the left corner of the screen, the camera captures the back and left profile of him. (RR at 12.13.12). Brown walks in and out of the screen, appearing to be waiting on the elevator. Brown does not appear agitated nor does he appear to be talking. (Id.). The elevator then opens and closes. (RR at 12.14.33).

The record does not reflect that Mr. Brown left the courtroom twice as no witness testified to such. Though there was testimony that Brown was speaking to his mother when he made the inflammatory comments, the video is cropped in such a way that you can not see anyone to the left of the screen. (*See* RR at 12.13.12). Accordingly, Brown believes the video evidence introduced at trial is insufficient to show he "looked right at" Dyar, Laney and Joseph while he spoke, in fact the video does not appear to show him speaking at all. Further, Brown believes the video evidence is insufficient to support his conviction for the offense of Retaliation.

**II. Did the trial court err when it overruled Appellant's Motion to Quash Indictment in violation of the Sixth Amendment to the United States Constitution?**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has the right to be informed of the accusation pending against him. See U.S. CONSTITUTION, AMENDMENT VI. Therefore, an indictment must allege all the elements of the crime to such a degree of precision that it would allow the accused to assert double jeopardy if the same charges are brought up in subsequent prosecution. Id.; See also United States v. Cruikshank, 92 U.S. 542 (1876).

Moreover, the Texas Constitution and Code of Criminal Procedure require that an indictment provide an accused with adequate notice. *See* State v. Mays, 967 S.W.2d 404, 406 (Tex.Crim.App.1998); Tex. Const. art. I., § 10; Tex.Code Crim.Proc.Ann. § 1.05. An indictment must allege the commission of an offense with enough certainty that the defendant can "plead the judgment that may be given upon it in bar of any prosecution for the same offense." Tex.Code Crim.Proc.Ann. § 21.04. Article 21.11 of the Code of Criminal Procedure drives the point even further:

> An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding

to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged. Id.

The State is bound by the allegations it sets out in the indictment and it must prove those particular allegations because of due process requirements, beyond a reasonable doubt. Taylor v. State, 637 S.W.2d 929, 930 (Tex. Crim. App. 1982).

Once a Motion to Quash is filed, however, an indictment must provide more specific allegations "if the prohibited conduct is statutorily defined to include more than one manner or means of commission." Benson v. State, 661 S.W.2d 708 (Tex. Crim. App. 1983); Saathoff v. State, 891 S. W. wd 264, 266 (Tex. Crim. App. 1994). Using the reasoning of Doyle, the indictment in the instant case failed to specify "the manner and means" by which Brown committed the offense of Retaliation. Doyle v. State, 661 S.W.2d 726, 727 (Tex.Crim. App.1983)(Trial court erred in overruling the motion to quash because the indictment did not allege "facts sufficient to bar a subsequent prosecution for the same offense" or give the defendant "precise notice of the offense with which he was charged." Id. at 731).

In the instant case the threat could have been conveyed in a number of ways. Moreover, there are several ways in which a defendant may actually

41

commit "assault or aggravated assault" as per the indictment. Accordingly, Brown believes the indictment in this case is fundamentally defective and insufficient to provide him notice of the offense charged as is his constitutional right. Furthermore, Brown's Motions to Quash Indictment were never ruled upon by the trial court. (CR p. 39, 46). Brown also re-urged his Motions to Quash Indictment at the conclusion of the trial to no avail as the trial was over. (RR p. 113, lines 1-7).

**III. Was there ineffective assistance of counsel where trial counsel failed to withdraw and there was no hearing held on Appellant's <u>Motion for New Trial</u> within the 75-day time period?**

In determining ineffective assistance by counsel, it is well-established that a two-prong analysis must take place. Deficient performance of counsel must be established first and second that the deficient performance deprived defendant of a fair trial. <u>Strickland v. Wasington</u>, <u>466 U.S. 668</u>, 692 (1984). Here, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 693.

Where the attorney's actions are without sound foundation, only then will an error in trial strategy be deemed inadequate representation. *See* <u>Rylander v. State</u>, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003). Courts

42

generally presume that the action (or inaction of trial counsel) is trial strategy when the record is silent as to trial counsel's motivations regarding the case at bar. Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App.1999). A claim of ineffective assistance of counsel will be upheld only where the record affirmatively supports such a claim. Thompson 9 S.W.3d at 812; Garcia v. State, 57 S.W.3d 436, 440 (Tex.Crim.App.2001); Strickland, 466 U.S. at 689. It is only when the manner of managing the particular case is "so outrageous that no competent attorney would have engaged in it" that the challenged management of the case will constitute ineffective assistance. Id. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. Courts have distinguished between those cases were appellant's were denied benefit of counsel, from those cases where counsel provided ineffective assistance. Smith v. Robbins, 528 U.S. 259 (2000). Where appellant has been denied trial counsel there is a presumption of prejudice. Id. at 286. Conversely, where there is ineffective assistance of counsel, no presumption of prejudice is assumed. Id.

Furthermore, both the Supreme Court and the 5th Circuit have determined that "the absence of counsel at critical stages of a defendant's trial undermines the fairness of the proceeding and therefore requires a

presumption that the defendant was prejudiced by such deficiency." <u>Burdine v. Johnson</u>, 262 F. 3d 336, 345 (5th Cir. 2001); *See also* <u>United States v. Cronic</u>, <u>466 U.S. 648, 659</u> (1984); <u>United States v. Russell</u>, <u>205 F.3d 768</u>, 770-71 (5th Cir. 2000). Both <u>Cronic</u> and <u>Strickland</u> stand for the proposition that the absence or denial of trial counsel at a critical stage of a criminal proceeding is an "egregious circumstance requiring the presumption of prejudice." <u>Burdine</u>, 262 F. 3d at 344; <u>Cronic</u> <u>466 U.S. at 659</u>; <u>Strickland</u> <u>466 U.S. at 692</u>.

Brown believes such applies to the facts of his case as trial counsel did not file any pretrial motions nor did he call a key witness who witnessed firsthand the language which is the subject of the instant conviction. Moreover, trial counsel did not subpoena the individual responsible for generating the video entered into evidence at trial. Brown believes the video was edited in such a way to further enhance the State's case in violation of his constitutional rights to due process. (See State's Exhibit 4).

Once the trial judge renders sentence, a defendant has thirty days to file a motion for new trial. Tex.R.App.P. 21.4(a). The Court of Criminal Appeals has determined that this time period "is a critical stage of the proceedings." <u>Cooks v. State</u>, 240 S.W.3d 906, 911 (Tex.Crim.App. 2007).

The Court of Criminal Appeals has also determined that "a defendant has a constitutional right to counsel during that period." *Id.* A hearing on the motion for new trial must occur within seventy-five days or it is overruled by operation of law. Tex.R.App.P. 21.8(c).

Brown was represented by trial counsel during the entire thirty-day period for filing a motion for new trial. However, he was unwilling to continue to be represented by trial counsel. Brown made three separate written allegations of ineffective assistance of counsel in three separate pro se motions, i.e. his Motion for New Trial, Motion to Appeal, and Amended Appellant's Brief. (CR pgs. 65, 73, and 120-130). Brown's Motion for New Trial and Motion to Appeal alleging ineffective assistance of counsel were both filed during this critical thirty-day time period. Appellant counsel was not appointed until after both the thirty-day time period and the seventy-five day time period in which to have a hearing on a Motion for New Trial had expired. Thus, clearly Brown was deprived of counsel during this critical stage. Moreover, trial counsel did not file a Motion to Withdraw until April 4, 2014.

"Deprivation of counsel is subject to a harmless error or prejudice analysis." Cook at 911. To show harm, there must be "facially plausible

45

claims" that could have been presented in a motion for new trial. Id at 912. Also see Massingill v. State, 8 S.W.3d 733 (Tex.App.-Austin 1999).

In the instant case, the issue had a motion for new trial taken place would have been sufficiency of evidence and ineffective assistance of counsel during the trial. Trial counsel did not file pretrial motions nor did he call a key witness who witnessed firsthand the language which is the subject of this indictment. Moreover, trial counsel did not subpoena the individual responsible for generating the video entered into evidence at trial. These witnesses will include Valerie Brown and Travis County personnel responsible for video services. Valerie Brown is Brown's mother who was present when the complained of language in the indictment was uttered.

Lastly, a new trial can be garnered through discovery of new evidence. A party who seeks a new trial on the ground of newly discovered evidence must show that (1) the evidence has come to the party's knowledge since the trial; (2) the evidence was not discovered earlier because of a lack of due diligence; (3) the evidence is not cumulative; and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). As to newly discovered evidence, "the issue is whether the trial court's refusal

of a new trial involves the violation of a clear legal right or a manifest abuse of judicial discretion." <u>Id</u>. at 809.

In his <u>Motion to Abate Appeal and Remand for Hearing on Motion for New Trial and for Permission to File Out of Time Motion for New Trial</u>,[4] Brown filed a letter from the trial judge where the trial judge indicated Brown's sentence would have been significantly reduced had he been able to have a hearing on his motion for new trial.

Mr. Brown consider's Judge Crain's letter new evidence. The letter, attached hereto and incorporated herein as Exhibit A, points out that had a hearing on Mr. Brown's Motion for New Trial occurred, it is likely the trial judge would have <u>significantly</u> reduced his sentence from 15 years in the Texas Department of Correction. Brown believes trial counsel provided him ineffective assistance of counsel by not having a hearing on the motion for new trial which would have resulted in his sentence being significantly reduced..

---

[4] Motion to Abate Appeal… was filed December 24, 2014  via efile.

# PRAYER FOR RELIEF

For the reasons addressed in this brief, Appellant prays that this Court

reverse the trial court's conviction of Appellant for the instant offense.

Respectfully submitted,

**BERNARD & ASSOCIATES**
1203 Baylor St.
Austin, TX 78703
Phone: (512) 478-5291
Fax: (512) 478-9827
**ATTORNEYS FOR APPELLANT**

By: /s/ Tanisa Jeffers_____
Brian Bernard
Tanisa Jeffers
State Bar No. 24001728
State Bar No. 24006153

**Email: attorneybernard@yahoo.com**

**tanisaL@hotmail.com**

## CERTIFICATE OF COMPLIANCE

In compliance with Tex. R. App. P. 9.4(i)(3), this is to certify that the Appellants' Brief contains <u>7,392</u> words, which does not include the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certificate of compliance, and appendix.

/s/ Tanisa Jeffers
TANISA JEFFERS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individuals as indicated, and according to the Texas Rules of Civil Procedure and/or via electronic mail pursuant to the parties' written agreement that such service shall constitute personal service on the 29th day of December, 2014.

Rosemary Lehmberg via electronic notice
Appellate Division: rosemary.lehmberg@traviscountytx.gov
Travis County District Attorney's Office
P.O. Box 1748
Austin, Texas 78701

By: /s/Tanisa Jeffers_____
Brian Bernard
Tanisa Jeffers
State Bar No. 24001728
State Bar No. 24006153

# Exhibit A



**DAVID CRAIN**
Judge
331st District Court

P.O. BOX 1748
AUSTIN, TEXAS 78745
OFFICE:   512-854-9443
FAX:       512-854-9140

December 22, 2014

Dear Sir/Madam,

A Trial Before the Court was held in the 331st District Court on October 23, 2013. At punishment Appellant James Brown became upset and had an outburst where he had to be removed from the courtroom. Sentencing continued without him, resulting in a sentence of 15 years in the Texas Department of Corrections.

Appellant filed a Motion for New Trial on October 31, 2013. Trial counsel filed a Motion for New Trial on November 1, 2013. Mr. Brown was set to come back to court on January 14, 2014. Mr. Brown refused to enter the courtroom. Thereafter, the Motion for New Trial expired by operation of law.

The Court fully intended to reduce the sentence significantly but Mr. Brown refused to participate.

Respectfully,

Judge David Crain